## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GOVERNMENT RELATIONS, INC.,

                    Plaintiff,

      v.

ALLYNN HOWE,

                Defendant.

Civil Action No. 1:05-cv-1081

## <u>ANSWER AND COUNTERCLAIMS</u>

Defendant Allynn Howe ("Defendant") by his attorneys, for his Answer to the Complaint, states as follows:

1.      Defendant denies the allegations contained in the first unnumbered paragraph of the Complaint, delineated as "I. Introduction."

2.      Defendant denies the allegations contained in the second unnumbered paragraph of the Complaint, delineated as "II. Jurisdiction," except admits that Plaintiff purports to invoke jurisdiction over Defendant as set forth therein.

3.      Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint, and therefore, it denies such allegations, except admits that Plaintiff has an office at the address referenced therein.

4.      Defendant denies the allegations contained in paragraph 2 of the Complaint, except admits that he is a resident of the Commonwealth of Virginia at the address referenced therein.

5.      Defendant denies the allegations contained in paragraph 3 of the Complaint.

6.      Defendant denies the allegations contained in paragraph 4 of the Complaint.

7.      Defendant repeats and realleges its responses to paragraphs 1 through 4 of its Answer in response to paragraph 5 of the Complaint as if fully set forth in this paragraph.

8.      Defendant denies the allegations contained in paragraph 6 of the Complaint.

9.      Defendant repeats and realleges its responses to paragraphs 1 through 6 of its Answer in response to paragraph 7 of the Complaint as if fully set forth in this paragraph.

10.     Defendant denies the allegations contained in paragraph 8 of the Complaint.

11.     Defendant repeats and realleges its responses to paragraphs 1 through 8 of its Answer in response to paragraph 9 of the Complaint as if fully set forth in this paragraph.

12.     Defendant denies the allegations contained in paragraph 10 of the Complaint.

13.     Defendant repeats and realleges its responses to paragraphs 1 through 10 of its Answer in response to paragraph 11 of the Complaint as if fully set forth in this paragraph.

14.     Defendant denies the allegations contained in paragraph 12 of the Complaint.

15.     Defendant denies the allegations contained in paragraph 13 of the Complaint.

16.    Defendant repeats and realleges its responses to paragraphs 1 through 13 of its Answer in response to paragraph 14 of the Complaint as if fully set forth in this paragraph.

17.    Defendant denies the allegations contained in paragraph 15 of the Complaint.

18.    Defendant denies the allegations contained in paragraph 16 of the Complaint.

19.    Defendant denies each allegation and claim contained in the WHERFORE clauses, delineated as (a) through (h), set forth in the Complaint

## FIRST DEFENSE

20.    The Court lacks personal jurisdiction over Defendant.

## SECOND DEFENSE

21.    The Complaint fails to state a claim against Defendant.

## THIRD DEFENSE

22.    The Complaint fails to state a claim for which costs, disbursements or attorneys' fees may be granted.

## FOURTH DEFENSE

23.    Plaintiff has not incurred any financial damages as a result of Defendant's actions.

## FIFTH DEFENSE

24.    Any decisions made by Defendant in connection with the actions set forth in the Complaint were made without malice and were made in accordance with legitimate business practices.

## SIXTH DEFENSE

25.     Plaintiff is barred from recovering any relief by the doctrine of unclean hands.


## COUNTERCLAIMS

For its Counterclaim, Defendant incorporates the prior paragraphs as if fully set forth herein and further alleges as follows:


## COUNTERCLAIMS BACKGROUND AND DESCRIPTION

26.     Defendant Howe is a lobbyist who has developed extensive knowledge of the legislative process and substantial contacts in Congress through decades of advocacy work.

27.     Mr. Howe's lobbying experience is not specific to any particular client or subject area, and has allowed him to represent dozens of clients on a variety of subjects including transportation, city government, tax, trade, and health policy.

28.     Registered lobbyists are required to provide the United States government with the name and address of each client he/she performs services for, the fees paid by each client, the subject matter of each lobbying effort, and every advocacy contact made to further such lobbying efforts.

29.     In early 2000, Mr. Howe and Plaintiff Government Relations, Inc. ("GRI") formed an alliance.

30.     At that time, GRI represented that it had a thriving lobbying practice, and was able to provide numerous business opportunities that Mr. Howe would be well positioned to benefit from.

31.    In exchange for directing income he earned from his preexisting clients, Mr. Howe was paid a flat fee for his GRI services and promised access to these new business opportunities.

32.    Under this arrangement, Mr. Howe continued to service his preexisting clients with limited GRI administrative support.

33.    He received no company health or life insurance benefits, and was responsible for continuing to provide his own phone, computer, and similar resources to carry out his lobbying efforts.

34.    By late 2004, Mr. Howe became concerned about continuing his relationship with GRI. For one thing, rather than providing Mr. Howe with the business opportunities that GRI had represented were available, the Company instead provided Mr. Howe with bogus "leads" for additional work.

35.    These "leads" required Mr. Howe to complete dozens of requests for proposals, requiring him to work hundreds of hours that he was not additionally compensated for.

36.    While Mr. Howe was successful at securing new work from his pre-existing professional contacts and friends, he was unable to secure a single interview as a result of GRI's "leads."

37.    In accordance with its agreement with Mr. Howe, GRI provided contracting and billing assistance for Mr. Howe's preexisting and new clients.

38.    GRI, however, failed to perform its obligations in an honest manner, and in accordance with generally accepted accounting and tax principles.

39.    GRI requested and received copies of receipts for expenses that Mr. Howe had incurred on behalf of clients in connection with his lobbying efforts.

40.     These same receipts had been declared and reimbursed by clients as lobbying expenses in accordance with applicable law.

41.     GRI nevertheless used these receipts to declare these expenses as business expenses that GRI had independently incurred, without being reimbursed for.

42.     Mr. Howe continued to develop good relationships with the clients he performed services for.  They frequently praised his extensive experience and contacts, and often insisted that he perform all lobbying efforts on their behalf.

43.     These same clients were generally unhappy with the services other GRI employees provided and specifically complained that GRI's principal, Mr. Thomas Bolger, acted inappropriately at client events.

44.     In December of 2004, GRI advised Mr. Howe that they were not happy with the services he was providing because his "expenses were going through the roof."

45.     GRI did not in fact pay for virtually any of Mr. Howe's non-reimbursable expenses.  Mr. Howe was instead responsible for paying the majority of his expenses, including business development, office, and transportation expenses.

46.     Mr. Howe welcomed this opportunity to end his relationship with GRI, and offered to transition his work to GRI over the weeks ahead.

47.     GRI rejected this offer, and told Mr. Howe that he should depart from the Company immediately.

48.    Upon information and belief, GRI proceeded to contact the clients that Mr. Howe had worked with and threatened to damage their businesses if they elected to retain Mr. Howe's services.

49.    These threats included, but were not limited to, advising clients that they would be sued in federal court if they retained Mr. Howe's services.

50.    These threats were intended to, and did, interfere with Mr. Howe's ability to carry out his lobbying career.

## COUNTERCLAIMS

## COUNT ONE

## BREACH OF CONTRACT

51.    Mr. Howe realleges and incorporates the prior paragraphs as if fully set forth herein.

52.    GRI and Mr. Howe entered into a legally binding contract in early 2000.  In exchange for Mr. Howe's lobbying services, GRI promised to provide Mr. Howe with numerous business opportunities via GRI's allegedly thriving lobbying practice.  This promise was a material part of the contract.

53.    GRI breached the contract with Mr. Howe by failing to provide him with the promised business opportunities.

## COUNT TWO

## FRAUD AND FRAUDULENT INDUCEMENT TO ENTER A CONTRACT

54.    Mr. Howe realleges and incorporates the prior paragraphs as if fully set forth herein.

55.     An essential element of Mr. Howe's determination to enter into a business relationship with GRI was the Company's repeated representations that it had a thriving lobbying practice, and that it would provide Mr. Howe with numerous business opportunities.

56.     GRI knowingly failed to provide reasonable disclosure about the nature of these opportunities and affirmatively misrepresented its ability to assist Mr. Howe in making proposals to these entities in order to induce him to work for the Company.

57.     GRI's omissions and misrepresentations induced Mr. Howe to provide services for GRI that he was not compensated for.

## COUNT THREE

## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS

58.     Mr. Howe realleges and incorporates the prior paragraphs as if fully set forth herein.

59.     Upon information and belief, GRI proceeded to contact the clients that Mr. Howe had worked with over the years and threatened to damage their businesses if they elected to retain Mr. Howe's services.

60.     These threats included, but were not limited to, advising clients that they would be sued in federal court if they retained Mr. Howe's services, despite the fact that these clients had negotiated agreements that permitted them to end their relationships with GRI in accordance with a notice provision.

61.     These threats were intended to, and did, interfere with Mr. Howe's prospective advantageous business relationships and to damage his lobbying career.

WHEREFORE, Mr. Howe requests the following relief:

(a) Awarding Counterclaimant such monetary damages as Counterclaimant may prove at trial, including prejudgment interest;

(b) Awarding Counterclaimant full reimbursement for all of the costs of this action, including attorneys' fees;

(c) Granting such equitable and injunctive relief as is appropriate to protect Counterclaimant from the unlawful actions of GRI;

(d) Granting such other and further relief as the Court may deem just and proper.

Respectfully submitted,

By: /s/ Todd A. Bromberg
     Todd A. Bromberg #472554
     **WILEY REIN & FIELDING LLP**
     1776 K Street NW
     Washington, DC  20006
     TEL: 202.719.7000
     FAX: 202.719.7049

     *Attorney for Defendant Allynn Howe*

Dated: June 16, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June, 2005 a copy of the foregoing Defendant's Answer and Counterclaims were served via electronic filing, pursuant to Local Rule 5.4(d)(1), upon David Fox, attorney for Plaintiff Government Relations, Inc.


_____/s/ Todd A. Bromberg_____
Todd A. Bromberg


WRFMAIN 12341221.1