**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GOVERNMENT RELATIONS, INC.** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 1:05cv01081 |
| v. ) | |
| ) | Judge: **Kollar-Kotelly** |
| **ALLYNN HOWE** ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION DISMISS [Counts 2,3,4,5, and 6 of] PLAINTIFF'S COMPLAINT**

COMES NOW Plaintiff Government Relations, Inc. (GRI), by and through counsel, to state in opposition to Defendant's Motion To Dismiss:

1. Defendant has alleged failure of personal service on Defendant, but admits that a copy of the Summons, Complaint and Order was served on his wife at his home. This Complaint was initially filed in D.C. Superior Court and service was consistent with D.C. Superior Court Rules. Plaintiff submits that constitutes effective service, and, further Defendant has made no Motion To Dismiss for improper service, and by filing an Answer has brought himself within the jurisdiction of this Court.

2. Plaintiff notes that Defendant has not moved to dismiss Count 1 of Plaintiff's Complaint, so Plaintiff does not address Count 1.

**PLAINTIFF'S 'PRELIMINARY STATEMENT'**

3. Plaintiff does not share defendant Howe's opinion of himself set out in his 'Prelimininary Statement' (sic) as a "highly regarded lobbyist". Nor did Defendant Howe and Plaintiff ever "form an alliance". Howe was hired to work for Plaintiff. Defendant Howe was an

employee, hired not only as a lobbyist but also to participate in other of Plaintiff's various government related business, including seeking and writing federal grants both for GRI and GRI clients, co-ordinating administrative efforts for GRI clients, representing clients before Regulatory Agencies, policy development, etc.  There was no written contract, but the terms of employment were simple, clear and straightforward.  Howe was to work with governmental entities on behalf of Plaintiff's clients and he was to bring in new clients and business for Plaintiff, a corporate firm specializing in lobbying and related government associated work for profit.  All new business developed and each new client solicited by Howe during his employment with Plaintiff was implicitly and explicitly to be for the direct benefit of Plaintiff.  No direct benefit in the form of client payments was to accrue to Howe personally.  His benefits were to be the normal indirect benefits that accrue to an employee, i.e., his salary and potential raises, bonuses, promotions, etc.  However, while accepting Plaintiff's salary payments, instead of working for the benefit of his employer, Plaintiff, Howe used his time, effort, status as an employee of Plaintiff, and 'insider information' about Plaintiff, and Plaintiff's clients and potential clients, gleaned during his employment with Plaintiff, to create his own separate and competing lobbying business.  Plaintiff verily believes and intends to prove that the dominant part of Defendant's new business consists of lobbying and related government work for clients for whom Howe was supposed to be working on behalf of Plaintiff or soliciting for business for Plaintiff.  While he was ostensibly working for Plaintiff, he was instead undermining Plaintiff and creating his own competing business.

    4. Every Complaint tells a story.  Defendant's Motion, including and in particular his 'Prelimininary Statement' (sic), is an attempt to obfuscate the clear simple story set out in

Plaintiff's Complaint and recast it as a different, confused and less lucid story. Defendant asks this court to accept the dubious factual construct made up in his 'Prelimininary Statement' (sic) as the relevant circumstantial background against which his 'restatement' of Plaintiff's story must be juxtaposed. Defendant essentially has attempted to twist and distort the factual circumstances of his employment with Plaintiff and implies that, upon acceptance of his 'restatement' this Court should deem Plaintiff's claims to be inadequate to sustain a cause of action.

## ARGUMENT

### I. MOTION TO DISMISS STANDARD

5. The standard for determining whether or not a Complaint states a cause of action is set by FRP-Civil 8 (a)(2). This Court must determine whether or not there is within Plaintiff's Complaint a short, plain statement of claim showing Plaintiff is entitled to relief.

### II. CHOICE OF LAW

6. Plaintiff's office is in the District of Columbia. Plaintiff's clients are located at various locations, but a significant amount of Defendant's lobbying efforts were to take place with government entities in the District of Columbia. Plaintiff's employment agreement with Defendant originated from and was negotiated in D.C.. The domicile of Plaintiff is its office in the District of Columbia, and Defendant was an employee of Plaintiff during the period in question. Defendant reported to work at Plaintiff's District of Columbia office. The District of Columbia is where the employment relationship was centered. Therefore, District of Columbia law should apply.

### III. <u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S ARGUMENTS RELATING TO SPECIFIC COUNTS OF THE COMPLAINT</u>

    **A.** <u>**Count 2: Breach of Implied Contract**</u>

7. Defendant has misstated the law as it relates to this Count. First, even if there were, as Defendant alleges, 'hornbook law' that states that "the existence of an express contract precludes Plaintiff from proceeding on a theory of implied contract", such 'hornbook law' would not preclude Plaintiff from advancing alternative theories of recovery, even if those theories were in direct conflict and mutually exclusive. See <u>Methyl Tertiary Butyl Ether Products Liability Litigation</u>, 2005 WL 906322 (S.D.N.Y.). There was no written agreement, so the existence and nature of any contract between the parties will have to be determined by the Court and the trier of fact after hearing all the evidence.

8. Second, and more important, there is no blanket 'hornbook law' that states that "the existence of an express contract precludes Plaintiff from proceeding on a theory of implied contract". What the cases say is that the Court will not look for the existence of an 'implied contract' where the matter about which an implied contract is alleged is fully addressed without ambiguity by an existing express contract, and where the so-called 'implied contract' would directly contradict specific provisions of the express contract. The cases cited by Defendant, to the extent there is any relevance to the instant facts, are either not on point, or to the extent they are on point, actually support Plaintiff's position. For example, <u>Southern Biscuit Co. v. Lloyd</u>, 174 Va. 299 (1940), was a case about the purchase price of flour. Southern Biscuit bought flour from Lloyd under a contract that specifically addressed a processing tax imposed under the so-called 'Agricultural Adjustment Act'. The contract stated that the amount of the tax was

incorporated into the purchase price of the flour with a contingency that any legislative or administrative action that changed the amount of tax charged would be either added to or rebated from the price of the flour. The tax was later held to be unconstitutional, and Southern Biscuit wanted the amount of the tax rebated. The Court held that the express contract between the parties specifically addressed the tax question and allowed only for a contingent price change if there was either legislative or administrative change in the amount of the tax, not judicial action declaring the tax unconstitutional. Because the express contract specifically addressed the tax issue in full, the Court refused to impose an implied contract provision that would have contradicted and superceded the negotiated and clearly set out express contract *on that issue*.

      9. The implied contract alleged in the instant Complaint in no way contradicts any express contract between the parties in any particular. Nor does it involve any aspect of the negotiated express contract. Rather, it is a logical extension of the express contract on a point not specifically set out directly in the express contract. The express contract of the instant facts required Defendant to act on behalf of the Plaintiff with regard to existing and newly solicited clients. The implied contract precluded Defendant from undermining his own and Plaintiff's efforts on behalf of Plaintiff by competing with his employer, Plaintiff for those very same clients. Nothing alleged in Plaintiff's complaint could possibly be construed as an allegation that there was an implied contract that contradicted the express contract in any particular.

      10. Defendant's reliance on <u>Marine Development Corp. v. Rodak</u>, 225 Va. 137, seems rather odd in that, to the extent <u>Marine Development</u> has any application to the instant facts, it fully supports Plaintiff's position. <u>Marine Development</u> was a case involving a design engineer, Rodak, hired by Marine Development to design and develop a new product line of commercial

marine refrigeration equipment. The alleged express contract was that Marine would pay Rodak a substandard wage while he worked on the development of the new equipment. If he was successful, the ownership of the new design was to be transferred to new corporation owned by both Rodak and Marine in proportion to the value of their respective contributions to the new product developed. Rodak did come up with a commercially viable product, but Marine refused to transfer the manufacturing rights to the new product to the new corporation that was formed and to which the marketing rights to the product were transferred. The Court in <u>Marine Development</u> clearly allowed Rodak to proceed under both the 'express contract' and 'implied contract' theories simultaneously. Further, the Court specifically stated that, "[an] implied contract is created by law to establish justice between parties, and that it does not require assent to bind party against his will . .". Further, even though Rodak was unable to prove up his express contract claim, he was allowed to recover under implied contract theory even though the recovery under the implied contract was for an amount greater than that to which he would have been entitled under his express contract theory. Plaintiff would be happy for this Court to follow the precedent set out in <u>Marine Development</u>.

    11. <u>Royer v. Board of County Supervisors</u>, 176 Va. 268 (1940) is a case in which Royer entered into an agreement with the Albemarle County Board of Supervisors to draft plans and specifications for the construction of a sewer system under the contingency that he would only be paid for his work if a bond election passed to raise money for the project. The bond issue was rejected by the voters, after which Royer asked for payment under *quantum meruit* theory. The Court held that the terms of the express contract made payment to Royer specifically contingent on the passing of the bond issue. It held that it would not supercede and contradict the specific

contingency provision of the contract.  Like Southern Biscuit, *supra*, there is no logical application of this case to the instant facts.  The instant Plaintiff is not asking this Court to supercede and contradict the express contract of the parties by applying implied contract theory.  The implied contract alleged is no contradiction of, but a logical and just extension of the express contract.

12.  The cases cited in footnote 3 of Defendant's Motion are similar in their failure to logically support Defendant's argument.  For example, Schiff v. American Ass'n of Retired Persons, 697 A.2d 1193 (D.C. 1997) is a case in which Schiff sought to sue the AARP under the provisions of the D.C. Consumer Protection and Procedures Act.  Schiff alleged that premiums he paid for insurance he bought from AARP provided a profit to AARP that did not directly benefit AARP membership.  The Court held that the D.C. Consumer Protection and Procedures Act did not apply to a non-profit corporation.  There was a dissenting opinion filed as to that point.  Further, the Court held that Schiff's insurance policy was an express contract and there was no reason to imply that his premiums had to go for any particular purpose (presumably other than those required generally under laws regulating reserves or other matter relating to insurance companies generally).

13. 1 Corbin on Contracts § 18 at 41, discusses how the Court may not construct an implied contract that contradicts an enforceable provision of an express contract.  Plaintiff does not dispute that legal concept.  However, Plaintiff's Count 2 does not ask this Court to do any such thing.

   B.  **Count 3: Quasi-Contract**

14.  Plaintiff does not quibble with Defendant's legal analysis with regard to quasi-contract, but, rather notes that Defendant misrepresents the clear language and meaning set out in

7

Plaintiff's Count 3. Count 3 of Plaintiff's Complaint does not, as Defendant alleges describe 'Mr. Howe's work experience' as the improper benefit he obtained. The Complaint clearly states that the benefit Defendant obtained was client lobbying business, i.e. the client business (and payment therefore) that rightfully belongs to Plaintiff. Count 3 clearly alleges that (1) Defendant took business away from Plaintiff (clearly for which he was paid - both parties are, as stated in the Complaint, in the business of lobbying and doing various government related work on behalf of clients who pay for those services); (2) Defendant certainly knew he was taking paying business for himself that he should have been obtaining for Plaintiff as Plaintiff's employee; and (3) it is certainly inequitable for an employee to retain and solicit paying lobbying business for himself from Plaintiff's clients as Plaintiff's competitor while (ostensibly) working as a lobbyist under the auspices of Plaintiff's lobbying firm and taking a salary from Plaintiff to do so. Plaintiff had a competitor it did not know it had in Defendant. Moreover, Plaintiff was paying Defendant to provide service to clients whose business Defendant was stealing. Defendant admits as much on p. 6, line 16 of his Motion in which he describes himself as Plaintiff's 'competitor'. The Complaint does not allege any sort of 'non-competition agreement' because this case is not about Defendant competing fairly for clients after ending his employment with Plaintiff. This case is about Defendant taking Plaintiff's clients for his own current and future business while still in Plaintiff's employ and while receiving Plaintiff's salary, not to steal Plaintiff's clients, but to retain and obtain their business for Plaintiff. The Complaint is very clear. It does not allege Defendant took away from his experience in the employ of Plaintiff some sort of 'experience and knowledge'. It states that Defendant took Plaintiff's actual business, its only business - its paying customers!

**C. <u>Count 4: Breach of Confidential and Fiduciary Relationship</u>**

15. <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 125 S.Ct. 1627 (2005) does not say what Defendant claims it says and does not have the generalized application to the instant facts Defendant claims. <u>Dura</u> is a case in which the Ninth U.S. Judicial Circuit was brought into compliance with the rest of the Country with regard to securities fraud claims by investors under the Securities and Exchange Act. <u>Dura</u> held that in order to prevail in a securities fraud case, a plaintiff must allege and prove not only that some misrepresentation created an inflated stock price, but also that the misrepresentation proximately caused the plaintiff some economic loss. <u>Dura</u> most certainly does **not** say, as Defendant alleges, that 'the conclusory assertion of an essential element of a claim is legally insufficient to provide adequate notice to a defendant of the claims asserted'. On the contrary, <u>Dura</u> states that the Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief". See <u>Dura</u>, at 1634. What <u>Dura</u> held was that where the Complaint makes an allegation that, in itself does not logically show a causal relationship between a misrepresentation and an economic loss to plaintiff, that pleading is deficient. Simply because a price was at some point inflated does not mean there is automatically a loss to the stockholder. There is no similar logical disconnect in Plaintiff's instant Count 4.

16. Count 4 adopts all the previous language of Plaintiff's Complaint, so it clearly alleges that Defendant obtained an economic benefit, i.e., business rightfully belonging to Plaintiff. Further, it alleges that Defendant obtained this business benefit by obtaining confidential information 'about plaintiff's business as well as that of plaintiff's clients and potential clients'. Further, Defendant obtained this information 'by operation of his duties as an

9

employee of plaintiff'. Obviously Defendant knows the nature and content of the confidential information he obtained. He can deny he did so, but it is absurd to suggest that the language of the Complaint does not give Defendant 'notice' of Plaintiff's claims. Count 4 further alleges that Defendant had a fiduciary duty to use this information for Plaintiff's benefit, not, as he did, for his own enrichment to Plaintiff's detriment. Again, Defendant can deny he did it. He cannot, however, in good faith suggest the Complaint does not let him know what he is being accused of and how his wrongful action proximately caused loss to Plaintiff. The facts in <u>Dura</u> simply do not line up with the facts of the instant action.

     17. Defendant also cites to <u>Tripp v. United States</u>, 257 F. Supp. 2d 37, claiming the holding in <u>Tripp</u> precludes Plaintiff from prevailing in a 'breach of confidential relationship tort claim'. The plaintiff in <u>Tripp</u> sought damages simply for the publication of confidential information about her by her employer. The facts in <u>Tripp</u> are clearly distinguished from the facts in the instant case in that Plaintiff GRI is the employer, not the employee, and Plaintiff GRI is not seeking damages simply because Defendant Howe published some confidential information. Plaintiff GRI seeks damage for the misuse of confidential information which caused unjust enrichment to Defendant and economic loss to Plaintiff.

     **D. Count 5: <u>Misappropriation and Conversion of Trade Secrets</u>**

     18. Defendant's reliance on <u>Thermal Zone Products Corp. v. Echo Engineering, Ltd.</u>, 1993 WL 358148 (N.D. Ill.) with regard to Plaintiff's Count 5 is not well taken, given that the <u>Thermal</u> Court's opinion on trade secrets is solely based on its interpretation of the Illinois Trade Secrets Act. Plaintiff does not agree that any choice of law question should lead to the use of Virginia law rather than D.C. law, even given that Defendant apparently lives in Virginia.

However, there is no cogent argument for the use of Illinois statutory law.

    19. Plaintiff's Count 5 includes information set out in the previous Counts, including that Defendant had misused for his selfish purposes, among other things, "client lists, insider knowledge of the names and various needs and interests of plaintiff's clients . ." (set out in Count 1, which was repeated and re-alleged as part of Count 5). It has been held that trade secrets can include a specialized customer list. See 27 Am Jur 2d § 178, citing to American Bldgs. Co. v. pascoe Bldg. Systems, Inc., 392 S.E.2d 860 (Ga. 1990); and Numed, Inc. v. McNutt, 724 S.W.2d 432 (Tex. App. Fort Worth 1987). Under the Uniform Trade Secrets Act, adopted by many states, which basically follows the common-law rule the Court may use the following to determine if information is a trade secret, (a) the extent to which the information is known outside of the employer's business; (b) the extent to which the information is known by employees and others involved in the business; (c) the extent of measures taken by the employer to guard the secrecy of the information; (d) the value of the information to the employer and to competitors; (e) the amount of effort or money expended by the company in developing the information; (f) the extent to which the information could be easily or readily obtained through an independent source. Information on current and future projects, as well as potential future opportunities for a firm, may constitute a trade secret. See Air Products and Chemicals, Inc. v. Johnson, 296 Pa. Super. 405, 442 A.2d 1114 (1982). It is abundantly clear from Plaintiff's Complaint, taken in toto, that Count 5 refers to client lists, and unique information on current and future projects, as well as potential future opportunities for Plaintiff's firm.

    20. Defendant's argument that Plaintiff's Count 5 claim ought to fail simply because Plaintiff did not demand return of its confidential information is absurd on its face. Plaintiff has

not 'lost' the information taken. Plaintiff still has access to its client lists. The unique information on current and future opportunities is mostly now dated or used by Defendant to Plaintiff's detriment. But Plaintiff would never have revealed that information to Defendant for Defendant's conversion and use in his own separate and competing business. If a thief comes in the night and steals your car, and wrecks it, you are not required to make a formal request that he 'give it back' before you can recover damages for its theft, improper use and loss. The instant facts simply are not consistent with the legal theories Defendant seeks to have applied to this Count.

### E. Count 6: Misappropriation of Plaintiff's Salary

21. There is a broad range of precedent to support this Count of Plaintiff's Complaint. 27 Am Jur 2d §§ 173, 174 and 175 describe situations analogous to that of the instant facts in which an employee may be required to disgorge salary or commission wrongfully obtained in a manner similar to that used by Defendant Howe. § 173 states that, "An employee may be liable to the employer for profits and compensation earned after termination of employment, where the employee uses knowledge and information acquired during the period of employment to eubsequently complete a project after termination of the employment". See Byrne v. Barrett, 268 N.Y. 199, 197 N.E. 217 (1935) (a salesman who, after resigning in good faith, completed a real estate deal he had been negotiating during his employment was held to have a duty to the employer for the commission earned, even though actual fraud or bad faith was not established). Here, Plaintiff will call as a witness another employee who observed Defendant specifically trying to steal Plaintiff's clients and obtain new clients for himself while on a business trip for Plaintiff.

22. § 174 states that, "An employee cannot, without the employer's consent, retain profits or earnings realized as a result of business activities in conflict with the employee's duties to the employer or with the contract of employment. Indeed, the employee may be required to account for any secret profit, fift, gratuity, or benefit which may have been received as a result of disloyal activities". See Byer v. International Paper Co., 314 F.2d 831 (10th Cir. 1963); Gassman & Gassman, C.P.A. v. Salzman, 112 A.D. 2d 82, 491 N.Y.S.2d 641 (1st Dept. 1985) (an accountant firm's manager taking accounting business for himself that could have been provided by his accounting firm).

23. § 175 states that, "In addition to any profit received by the employee as a result of improper dealings, an employee who breaches the duty of loyalty to the employer must surrender any compensation paid by the employer during the period of the breach. It is not necessary that the employer suffer actual loss before he or she is entitled to recover ill-gained profits from the employee. See Chelsea Industries, Inc. v. Gaffney, 389 Mass. 1, 449 N.E.2d 320 (1983); Henderson v. Rep Tech, Inc., 162 A.D. 2d 1028, 557 N.Y.S. 2d 224 (4th Dept. 1990); see also Vinson v. E.W. Buschman Co., 172 Ga. App. 306, 323 S.E. 2d 204 (1984) (an employee who secretly operated a surreptitious competing business from his employer's office was not entitled to retain any compensation from the employer or any income or benefits derived from the competing business).

## IV. CONCLUSION

As stated above and in Dura, supra, compliance with FRP-Civil 8 (a)(2) is the standard Plaintiff must meet in its Compliant. For the foregoing reasons, and such others as may be brought forward at a hearing on this Motion Plaintiff suggests that standard has been met and

Plaintiff respectfully requests that Defendant's above Motion be denied.

                                                           Respectfully submitted,

                                                           _____/s/_____

                                                           David E. Fox, Esq.
                                                           *Attorney for Plaintiff*
                                                           1325 Eighteenth Street, N.W.
                                                           Suite 103
                                                           Washington, D.C.  20036
                                                           (202) 955-5300
                                                           FAX (202) 872-0200

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing Plaintiff's Response In Opposition To Defendants' Motion To Dismiss Plaintiff's Complaint, Affidavit in support thereof, and proposed Order, were served via electronic filing, pursuant to Local Rule 5.4(d)(1), upon Todd A. Bromberg, Esq.

this   20th   day of June, 2005.

                                                           _____/s/_____
                                                           David E. Fox

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **GOVERNMENT RELATIONS, INC.** )<br>)<br>Plaintiff, )<br>) Case No.: 1:05cv01081<br>v. )<br>) Judge: **Kollar-Kotelly**<br>**ALLYNN HOWE** )<br>)<br>Defendant. )<br>) | |

## ORDER

UPON CONSIDERATION OF Defendant Howe's Motion To Dismiss Plaintiff's Complaint, and Plaintiff Government Relations, Inc.'s Opposition thereto, it is this _____ day of _____, 2005,

ORDERED, that Defendant's above Motion be and hereby is DENIED.

_____
Judge, United States District Court
For The District Of Columbia

copies to:

Todd A. Bromberg, Esq.,
Wiley Rein & Fielding LLP
1776 K Street, NW
Washington, DC 20006
*Counsel for defendant Howe*

David E. Fox, Esq.
1325 Eighteenth Street, NW
Suite 103
Washington, DC 20036
*Counsel for plaintiff Government Relations, Inc.*

**TABLE OF CONTENTS**

Plaintiff's Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

I.  Motion To Dismiss Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

II. Choice Of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

III.  Plaintiff's Response In Opposition Defendant's Arguments Relating
      To Specific Counts Of The Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

    A.  Count 2: Breach of Implied Contract . . . . . . . . . . . . . . . . . . . . . . . . . . .3

    B.  Count 3: Quasi-Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    C.  Count 4: Breach of Confidential and Fiduciary Relationship . . . . . . . . . .9

    D.  Count 5: Misappropriation and Conversion of Trade Secrets . . . . . . . . 10

    E.  Count 6: Misappropriation of Plaintiff's Salary . . . . . . . . . . . . . . . . . . 12

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**TABLE OF AUTHORITIES**

**CASES**

Air Products and Chemicals, Inc. v. Johnson,
    296 Pa. Super. 405, 442 A.2d 1114 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . 11

American Bldgs. Co. v. pascoe Bldg. Systems, Inc.,
    392 S.E.2d 860 (Ga. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Byer v. International Paper Co., 314 F.2d 831 (10th Cir. 1963) . . . . . . . . . . . . . . . . 13

Byrne v. Barrett, 268 N.Y. 199, 197 N.E. 217 (1935) . . . . . . . . . . . . . . . . . . . . . . . .12

Chelsea Industries, Inc. v. Gaffney, 389 Mass. 1, 449 N.E.2d 320 (1983) . . . . . . . 13

Dura Pharmaceuticals, Inc. v. Broudo, 125 S.Ct. 1627 (2005) . . . . . . . . . . . . . . . . .9

Gassman & Gassman, C.P.A. v. Salzman,
    112 A.D. 2d 82, 491 N.Y.S.2d 641 (1st Dept. 1985) . . . . . . . . . . . . . . . . . . 13

Henderson v. Rep Tech, Inc.,
    162 A.D. 2d 1028, 557 N.Y.S. 2d 224 (4th Dept. 1990) . . . . . . . . . . . . . . .13

Marine Development Corp. v. Rodak, 225 Va. 137 . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Methyl Tertiary Butyl Ether Products Liability Litigation,
    2005 WL 906322 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

Numed, Inc. v. McNutt, 724 S.W.2d 432 (Tex. App. Fort Worth 1987) . . . . . . . . . 11

Royer v. Board of County Supervisors, 176 Va. 268 (1940) . . . . . . . . . . . . . . . . . .6

Schiff v. American Ass'n of Retired Persons, 697 A.2d 1193 (D.C. 1997) . . . . . . . .7

Southern Biscuit Co. v. Lloyd, 174 Va. 299 (1940) . . . . . . . . . . . . . . . . . . . . . . . .4, 7

Thermal Zone Products Corp. v. Echo Engineering, Ltd.,
    1993 WL 358148 (N.D. Ill.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

Tripp v. United States, 257 F. Supp. 2d 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

Vinson v. E.W. Buschman Co., 172 Ga. App. 306, 323 S.E. 2d 204 (1984) . . . . . . .13

**RULES**

FRP-Civil 8 (a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 13

**MISCELLANEOUS**

1 Corbin on Contracts § 18 at 41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

27 Am Jur 2d §§ 173, 174 and 175 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 13

27 Am Jur 2d § 178 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11