IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GOVERNMENT RELATIONS, INC., <br><br>    Plaintiff, <br><br> v. <br><br>ALLYNN HOWE, <br><br>    Defendant. | Civil Action No.  1:05-cv-1081 (CKK) |

### DEFENDANT ALLYNN HOWE'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

  The Opposition filed by Plaintiff Government Relations, Inc. ("GRI" or "Plaintiff") to Defendant Allynn Howe's ("Mr. Howe" or "Defendant") Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss counts 2, 3, 4, 5, and 6 of the Complaint ("Complaint") fails to establish that these counts state a valid claim against Defendant.  On that basis, Defendant requests that counts 2, 3, 4, 5, and 6 be dismissed with prejudice.  While the parties plainly have significantly different views of the relevant events leading up to this litigation, the fact remains that even when Plaintiff's allegations are taken as true, counts 2, 3, 4, 5, and 6 fail to state valid causes of action against Defendant.[1]

---

[1] For a further statement of the relevant facts, Mr. Howe respectfully refers the Court to paragraphs 26 to 50 of his Answer and Counterclaims.

## ARGUMENT

**I.     CHOICE OF LAW**

Defendant continues to contend that, in light of the fact that the alleged torts as well as the majority of the work to be performed under the relevant contract took place in Virginia, District of Columbia choice of law rules mandate that Virginia substantive law governs this matter. While objecting to Defendant's choice of law, Plaintiff seems to concede that there is no conflict between District of Columbia law and Virginia law in regard to the issues presented by this motion and Plaintiff has primarily analyzed and interpreted the Virginia cases cited by Defendant.[2] Under either forum's law, the Complaint must be dismissed.

**II.    PLAINTIFF'S ALLEGATIONS FAIL TO STATE CLAIMS UNDER WHICH RELIEF CAN BE GRANTED**

    **A.     Count 2: Breach of Implied Contract**

GRI initially argues that its breach of implied contract claim should survive despite the alleged existence of an express contract because a plaintiff is allowed to plead in the alternative. While alternative pleading is unquestionably permissible, that is not what Plaintiff has done here. Rather, he has pled one internally inconsistent theory in a single cause of action, alleging in the same sentence both an express contract and an implied contract. Specifically, count 2 claims that "defendant's **employment contract** clearly contained an implied contract to act on plaintiff's behalf with regard to current and potential future clients of plaintiff and, further to *not* act to the detriment of plaintiff by soliciting those same clients for the same business for himself alone." Complaint, ¶ 6 (emphasis added). GRI cannot allege an implied contract relating to employment

---

[2] To the extent that the Court believes that it is necessary to resolve the choice of law issue in order to rule on the instant motion, Defendant request that the motion be stayed so that the parties may present evidence and further briefing regarding this issue.

2

issues in the same count which alleges the existence of an express employment agreement.[3]

Plaintiff attempts to evade the numerous holdings in both Virginia and the District of Columbia that "an express contract defining the rights of the parties necessarily precludes the existence of an implied contract of a different nature containing the same subject matter." *Southern Biscuit Co. v. Lloyd*, 174 Va. 299, 311 (1940). GRI tries to distinguish these cases by arguing that they all involved instances where the alleged implied contract directly contradicted the provisions of the express contract. This is an inaccurate interpretation of the relevant precedent. For instance, in reaching its decision in *Southern Biscuit*, the Virginia Supreme Court relied on and quoted extensively from the holding in *Johnson v. Igelhart Bros, Inc.*, 95 F.2d 4, 8 (7th Cir. 1938). As quoted in *Southern Biscuit*, the *Johnson* court first stated the general rule that an express contract precludes a contradictory or different implied contract. *Id*. The court then held that even though the alleged implied covenant at issue was **not contradictory**, it was "different and in addition" to the terms of the express contract, and was thus barred. *Id*. The *Johnson* court also quoted the Supreme Court, which has held that "[I]mplied promises or promises in law exist only when there is no express promise between the parties, *expressum facit cessare tacitum*. Hence… a party cannot be bound by an implied promise, when he has made an express contract as to the same subject-matter; which is certainly sound law, unless the express contract has been rescinded or abandoned." *Hawkins v. United States*, 96 U.S. 689 (1887).

Under this rule, the existence of an express contract bars a claim for an implied contract that deals with the same subject matter and seeks to add terms, even if the implied contract does not contradict the express contract. Adding terms to an express contract is precisely what Plaintiff seeks to do. Indeed, GRI admits that the implied contract "is a logical extension of the

---

[3] Defendant strenuously denies that he was an employee of GRI. However, GRI's allegations in this regard must be taken as true for the purposes of the instant motion.

express contract on a point not specifically set out directly in the express contract." Plaintiff's Opposition to Defendant's Motion to Dismiss, p. 5, ¶ 9. In other words, Plaintiff concedes that it is attempting to create additional, implied terms that were not part of the alleged express contract which governed the parties' relationship. The terms of Defendant's alleged employment are defined by the employment agreement. GRI cannot now add additional terms that it wishes were negotiated between the parties at the time of contract formation.

Plaintiff's analysis of *Marine Development Corp. v. Rodak* and *Royer v. Board of County Supervisors* is irrelevant, because both cases simply reinforce the point that pleading in the alternative is permissible. See *Rodak*, 225 Va. 137, 142-3 (1983)*; Royer v. Board of County Supervisors*, 176 Va. 268, 279 (1940) ("The plaintiff *next* argues… .") (emphasis added). As noted, GRI did not plead a breach of contract and implied contract claim in the alternative; Plaintiff alleged the existence of both an express contract and an implied contract in the same sentence in Count 2, a claim for breach of implied contract.

This is not the case where the parties dispute the existence of the contract, thereby raising the possible need for an implied contract. Here, the parties agree that they had an express contract, and the parties should be bound by that agreement. The fact that Plaintiff alleges the existence of an enforceable, express contract, within a cause of action for breach of implied contract precludes him from bringing a breach of implied contract claim when the implied contract would cover the same subject as the express contract. As such, count 2 fails to state a valid cause of action against Defendant.

    B.    <u>**Count 3: Quasi-Contract**</u>

Plaintiff's argument in support of his quasi-contract claim is necessarily convoluted because this claim is an attempt to shoehorn unmatched facts into an inappropriate cause of

action. To establish a quasi-contract, a plaintiff must prove three elements: "(1) a benefit conferred on the defendant; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *Nossen v. Hoy*, 750 F. Supp. 740, 744 (E.D. Va. 1990).

GRI claims that Defendant inappropriately took away business that belonged to GRI. Such an argument is simply not appropriate for a quasi-contract cause of action. The relationship between GRI and Defendant was defined by an express contractual agreement. This fact is not disputed by GRI and is noted several times in the Complaint. To the extent that GRI believes that Defendant breached that contract, the appropriate response is a breach of contract claim. GRI is unable to recover under a quasi-contract theory without showing that Mr. Howe somehow unjustly retained something that rightfully belongs to GRI. The lobbying business at issue here did not "belong" to GRI. This is simply not the type of factual circumstance which is appropriate for an equitable quasi-contract claim. Indeed, GRI has failed to cite a single case in either the Complaint, nor its opposition brief, where a plaintiff in Virginia, the District of Columbia, or any other state or federal jurisdiction in the country has brought a successful quasi-contract claim under the instant facts. On that basis, GRI's quasi-contract claim should be dismissed.

C. **Counts 4 and 5: Breach of Confidential and Fiduciary Relationship and Misappropriation and Conversion of Trade Secrets**

Defendant responds to GRI's opposition to its arguments with respect to counts 4 and 5 together because both arguments center around Plaintiff's failure to identify what confidential information or trade secrets Defendant supposedly misused.

The critical case in this regard is *Thermal Zone Products Corporation v. Echo*

5

*Engineering, Ltd,* 1993 WL 358148 (N.D.Ill. 1993), where a plaintiff's claim was dismissed because it failed to provide sufficient specificity with regard to alleged trade secrets and confidential information. This was true despite the fact that the *Thermal Zone* plaintiff provided much more detail than that which GRI has pled.[4]

The sum total of GRI's effort to distinguish the holding of *Thermal Zone* is to contend that the case should be ignored because it interprets the Illinois Uniform Trade Secrets Act, and Illinois law does not apply to this matter. However, Illinois, Virginia and the District of Columbia have all adopted the Uniform Trade Secrets Act. On that basis, all three jurisdictions have identical trade secret protections and the *Thermal Zone* court was interpreting the precise statute that is at issue here. Courts within this jurisdiction and throughout the country have held that it is relevant to consider the way in which courts in other jurisdictions have interpreted the Uniform Trade Secrets Act. *See Catalyst & Chemical Services, Inc. v. Global Ground Support,* 350 F.Supp.2d 1, 8 (D.D.C. 2004); *Dicks v. Jensen*, 172 Vt. 43 (2001) (holding that because the Vermont trade secrets act is based on the Uniform Trade Secrets Act, in interpreting the state trade secrets statute the court "draw[s] from the decisions of [their] sister states"); *World Wide Prosthetic Supply, Inc. v. Mikulsky,* 246 Wis.2d 461, n. 5 (2001) (same), aff'd, 251 Wis.2d 45, 640 N.W.2d 764. In any event, GRI makes no attempt whatsoever to distinguish the long line of additional cases cited in Defendant's Motion supporting the principle

---

[4] GRI's attempt to limit the holding of *Dura Pharmaceuticals, Inc. v. Broudo,* 125 S.Ct. 1627, 1630 (2005) to the precise facts presented in that matter is not well-taken. The Supreme Court in *Dura* specifically held that the plaintiff has an obligation to provide the defendant with notice of what the plaintiff's claim is, particularly when it would not "prove burdensome" for the plaintiff to do so. Here, GRI clearly has knowledge of the confidential information and trade secrets at issue and it would not be burdensome for those to be identified.

articulated in *Thermal Zone*.[5]

In an attempt to salvage counts 4 and 5, GRI argues that "client lists, unique information on current and future projects, as well as potential opportunities for Plaintiff's firm" are the trade secrets and confidential information at issue here. At the outset, "unique information on current and future projects, as well as potential opportunities for Plaintiff's firm" is exactly the kind of general, vague, meaningless statement which provides Defendant with no understanding whatsoever of the claims being asserted against him. GRI continually refuses to state what projects and opportunities are at issue, how they were allegedly misappropriated and what steps GRI took to keep the information confidential.

It is telling that GRI's opposition neglects to argue that GRI's client lists are confidential or private. This is true because lobbying is a heavily regulated "industry." The client lists and projects are all a matter of public record. The 1995 Lobbying Disclosure Act requires lobbyists to make information about clients public. *See* 2 U.S.C.A. §§ 1603-1604 (1998). Lobbyists must register after making a lobbying contact or being retained to make a lobbying contact. Lobbyists must also file semiannual reports for each client that include issues for which the lobbyist was employed, agencies or Houses of Congress contacted, and, for lobbying firms, the estimated amount of income from each client. *See Id.* These registrations are easily accessible through government and other websites. *See* http://sopr.senate.gov, a Senate website which, pursuant to the Lobbying Disclosure Act, allows the public to view filings regarding lobbyist's clients and

---

[5] *Leopoldo Fontanillas, Inc. v. Luis Ayala Colon Sucesores, Inc.,* 283 F.Supp.2d 579, 589 (D.P.R. 2003) (Granting Motion to Dismiss Misappropriation of Trade Secrets claim with prejudice, finding complaint "devoid of any allegations whatsoever regarding what trade secrets were appropriated…"); *Analog Devices, Inc. v. Michalski*, 579 S.E.2d 449 (Ct.App.N.C. 2003) ("It is generally accepted that a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur."); *Trandes Corp. v. Guy F. Atkinson Co.,* 996 F.2d 655, 661 (4th Cir. 1993) (Under Virginia law, "the alleged trade secret must be described in sufficient detail to establish each element of a trade secret.").

fees. The result of these filings is that any lobbyist or lobbying firm's client list and relevant financial information related to each client is readily available to the public, and cannot possibly be considered confidential by any standard.

GRI's only allegation which would legitimately place Defendant on notice of the claims being asserted against him with regard to confidential information or trade secrets is related to GRI's client list. This client list, as well as the exact amounts paid by those clients, is legally required to be public information and, therefore, cannot constitute confidential information or qualify as a trade secret. On that basis, counts 5 and 6 of GRI's complaint do not state a claim against Defendant.

        D.      <u>**Count 6: Misappropriation of Plaintiff's Salary**</u>

GRI's misappropriation of salary claim is simply another attempt by GRI to pound a square peg into a round hole. Misappropriation of salary is not a cause of action; it is a measure of damages. The treatises and cases cited by GRI are all either inapposite to this issue or support Defendant's contention that misappropriation of salary has not been recognized as an independent cause of action in Virginia, the District of Columbia, or any other jurisdiction.

GRI first cites 27 AM. JUR. 2D §§ 173 and 174 and supporting cases from those treatises. However, this authority has no bearing on the issue presented in Defendant's motion. Section 173 and its sole supporting authority, *Byrne v. Barret*, 286 N.Y. 199, 197 N.E. 217 (1935), does not involve a "misappropriation of salary." In fact, *Byrne* did not involve the use or misuse of salary payments at all. The dispute in *Byrne* was over a commission that a salesperson received from a client after he resigned from the firm and started his own business. The real estate firm claimed that the salesman had breached a duty of confidentiality by misleading it about the status of negotiations before the salesman left the firm and then, after leaving the firm, by using his

8

knowledge of the negotiations. *Byrne*, 197 N.E. at 218. Thus, the claim was one of breach of confidentiality, not "misappropriation of salary." In addition, the measure of damages discussed in *Byrne* was not the defendant's salary, but instead was the allegedly wrongful commission earned *after* termination of employment. As such, § 173 is not germane to this matter.

Similarly, § 174 and the supporting cases cited therein are likewise inapplicable here insofar as they involve the improper retention of "secret profits" by a disloyal employee acting in conflict to the interests of his or her employer. Clearly, salary cannot constitute "secret profits" because the employer is obviously aware of how much the employee at issue is being paid in salary. The only reference made to salary in *Byer v. International Paper Co.*, 314 F.2d 831 (10th Cir. 1963) and *Gassman & Gassman v. Salzman*, 491 N.Y.S.2d 641 (1985), the cases cited by GRI, is in measuring potential damages, not as an independent cause of action.

The same is true for 27 AM. JUR. 2D *Employment Relationship* § 175. While §175 does state, "[A]n employee who breaches the duty of loyalty to the employer must surrender any compensation paid by the employer during the period of the breach," it is clear that compensation serves as a measure of damages for claims such as breach of a duty of loyalty. It does not establish an independent tort of misappropriation of salary. All the cases that Plaintiff cites support this conclusion. In *Chelsea Industries, Inc. v. Gaffney*, 449 N.E.2d 320 (Mass. 1983), a president and three vice presidents of a manufacturer were held liable for damages in the amount of their compensation for a breach of fiduciary duty for setting up a competing manufacturing business after a series of disloyal actions. The court makes explicit that the restoration of compensation is an equitable remedy for the breach of fiduciary duties. *Gaffney*, 449 N.E.2d at 327.

Similarly, in *Henderson v. Re Tech, Inc.*, 557 N.Y.S.2d 224 (4th Dept. 1990), an

9

employee was found liable for disloyalty and for exploiting trade secrets. Forfeiture of compensation received during his period of disloyalty was consequently found to be an appropriate remedy. Lastly, in *Vinson v. E.W. Buschman Co*, 323 S.E.2d 204 (Ga. 1984), employees who established a competing business on the premises and used their employer's equipment were found liable for bad faith and fraud, and were forced to give up commissions earned during the period of bad faith and fraud. All of the cases cited with regard to §175 indicate that salary can be a measure of damages, not a cause of action.

GRI has not cited a single case from Virginia or the District of Columbia in support of this claim. The cases cited from other jurisdictions all completely undercut GRI's assertion that misappropriation of salary is a legitimate cause of action. On that basis, Defendant respectfully requests that count 6 be dismissed.

### III.    CONCLUSION

For the foregoing reasons, Defendant Allynn Howe respectfully requests that the Court dismiss counts 2, 3, 4, 5, and 6 with prejudice and grant such further and other relief that the Court deems appropriate.

Respectfully submitted,


By: /s/ Todd A. Bromberg
    Todd A. Bromberg #472554
    **WILEY REIN & FIELDING LLP**
    1776 K Street NW
    Washington, DC  20006
    TEL: 202.719.7000
    FAX: 202.719.7049

    *Attorney for Defendant Allynn Howe*

Dated: July 6, 2005

## TABLE OF AUTHORITIES

### CASES

*Analog Devices, Inc. v. Michalski*,
    579 S.E.2d 449 (Ct.App.N.C. 2003) ...................................................................................7
*Byer v. International Paper Co.*,
    314 F.2d 831 (10th Cir. 1963) .............................................................................................9
*Byrne v. Barret*,
    286 N.Y. 199, 197 N.E. 217 (1935) ...................................................................................9
*Catalyst & Chemical Services, Inc. v. Global Ground Support*,
    350 F. Supp. 2d 1 (D.D.C. 2004) ........................................................................................6
*Chelsea Industries, Inc. v. Gaffney*,
    449 N.E.2d 320 (Mass. 1983) ...........................................................................................10
*Dicks v. Jensen*,
    172 Vt. 43 (2001) ................................................................................................................6
*Dura Pharmaceuticals, Inc. v. Broudo*,
    125 S. Ct. 1627 (2005) ........................................................................................................6
*Gassman & Gassman v. Salzman*,
    491 N.Y.S.2d 641 (1985) ...................................................................................................9
*Hawkins v. United States*,
    96 U.S. 689 (1887) ..............................................................................................................3
*Henderson v. Re Tech, Inc.*,
    557 N.Y.S.2d 224 (4th Dept. 1990) .................................................................................10
*Johnson v. Igelhart Brothers, Inc.*,
    95 F.2d 4 (7th Cir. 1938) ....................................................................................................3
*Leopoldo Fontanillas, Inc. v. Luis Ayala Colon Sucesores, Inc.*,
    283 F. Supp. 2d 579 (D.P.R. 2003) ....................................................................................7
*Nossen v. Hoy*,
    750 F. Supp. 740 (E.D. Va. 1990) .....................................................................................5
*Marine Development Corp. v. Rodak*,
    225 Va. 137 (1983) .............................................................................................................4
*Royer v. Board of County Supervisors*,
    176 Va. 268 (1940) .............................................................................................................4
*Southern Biscuit Co. v. Lloyd*,
    174 Va. 299 (1940) .............................................................................................................3
*Thermal Zone Products Corporation v. Echo Engineering, Ltd*,
    1993 WL. 358148 (N.D.Ill. 1993) ..................................................................................6, 7
*Trandes Corp. v. Guy F. Atkinson Co.*,
    996 F.2d 655 (4th Cir. 1993) ..............................................................................................7
*Vinson v. E.W. Buschman Co*,
    323 S.E.2d 204 (Ga. 1984) ...............................................................................................10
*World Wide Prosthetic Supply, Inc. v. Mikulsky*,
    246 Wis. 2d 461 (2001), aff'd, 251 Wis.2d 45, 640 N.W.2d 764 .......................................7

### STATUTES

2 U.S.C.A. §§ 1603-1604 (1998) ................................................................................................8

# **TABLE OF CONTENTS**

I. CHOICE OF LAW ................................................................................................................ 2

II. PLAINTIFF'S ALLEGATIONS FAIL TO STATE CLAIMS UNDER WHICH
    RELIEF CAN BE GRANTED ............................................................................................. 2

   A. Count 2: Breach of Implied Contract............................................................................. 2

   B. Count 3: Quasi-Contract.................................................................................................. 4

   C. Counts 4 and 5: Breach of Confidential and Fiduciary Relationship and
      Misappropriation and Conversion of Trade Secrets ................................................... 5

   D. Count 6: Misappropriation of Plaintiff's Salary ............................................................ 8

III. CONCLUSION................................................................................................................... 10