# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Government Relations, Inc., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:05-cv-1081 (CKK) |
| | ) | |
| Allynn Howe, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE
AMENDED COMPLAINT**

Anne M. Wagner
D.C. Bar No. 435728
820 First Street, NE, Ste. 580
Washington, D.C. 20002
(202) 512-3836


Todd A. Bromberg
D.C. Bar No. 472554
Wiley Rein & Fielding LLP
1776 K Street NW
Washington, DC  20006
(202) 719-7000

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES. ........................................................................................  i

INTRODUCTION. ................................................................................................  1

BACKGROUND. ................................................................................................  1

PROCEDURAL HISTORY ................................................................................  3

ARGUMENT. ....................................................................................................  5

   I.  **Standard of Review.** .................................................................................  5

  II.  **The Amended Complaint Must Be Dismissed For Failure
      To State A Claim under Fed.R.Civ.P. 12(b)(6)..** ................................  6

      **A.  Plaintiff Fails To State a Claim for Tortious
         Interference with Contract.** ...........................................................  6

      **B.  Plaintiff Fails To State a Claim for Breach of
         Fiduciary Duty.** ..............................................................................10

      **C.  Plaintiff Fails To State a Claim for
         Misappropriation and Conversion** .............................................13

      **D.  Plaintiff Fails To State a Claim for Fraud** ...............................  17


CONCLUSION. .................................................................................................  20

# TABLE OF AUTHORITIES

**Cases**            **Page**

*Alfred A. Altimont, Inc. v. Chatelain, Saperton & Nolan,*
374 A.2d 284 (D.C.1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Analog Devices, Inc. v. Michalski,* 579 S.E.2d 449 (Ct.App.N.C.2003). . . . . . 15

*Bennet v. Kiggins*, 377 A2d 57, 59 (D.C.1977),
*cert. Denied,* 434 U.S. 1034 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bennett Enter., Inc. v. Domino's Pizza, Inc.*
45 F.3d 493 (D.C.Cir.1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Brown v. Carr,* 503 A.2d 1241, 1247 (D.C.1986). . . . . . . . . . . . . . . . . . . . . . 7

*Browning v. Clinton*, 292 F.3d 235 (D.C.Cir. 2002). . . . . . . . . . . . . . . . . . . . 5

*Business Equipment Center Ltd., v. De Jur-Amsco Corp.,*
465 F.Supp.775 (D.D.C. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*CASCO Marina Development, L.L.C. v. District of Columbia*
*Redevelopment Land Agency*, 834 A.2d 77 (D.C. 2003). . . . . . . . . . . . . . . . 6

*Calvetti v. Antcliff*, 346 F. Supp. 2d 92 (D.D.C. 2004). . . . . . . . . . . . . . . . . . 18

*Chaves v. Johnson,* 230 Va.112, 120 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Conley v. Gibson,* 355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Credit Corp. v. Kaplan,* 198 Va. 67 (1956). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*DAG Enterprises, Inc. v. Exxon Mobil Corp.,*
2001 WL 34778782 (D.D.C. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*D'Ambrosio v. Colonade Council of Unit Owners,*
717 A.2d 356 (D.C. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Duggin v. Adams*, 234 Va. 221 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dura Pharmaceuticals, Inc. v. Broudo,* 125 S. Ct. 1627, 1630 (2005). . . . . . . *passim*

*Economopoulos v. Kolaitis*, 528 S.E.2d 714, 719 (Va.App.2000). . . . . . . . . . 16

*Feddeman v. Langdon Assoc.,* 260 Va. 35 (2000). . . . . . . . . . . . . . . . . . . . . . 11

*Furash & Co. v. McClave,* 130 F.Supp.2d 48 (D.D.C. 2001). . . . . . . . . . . . .   *passim*

*Garcia v. Llerena*, 599 A.2d 1138 (D.C. 1991). . . . . . . . . . . . . . . . . . . . . . .   9

*Genetic Systems Corporation v. Abott Labs.,*
  691 F.Supp. 407 (D.D.C. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Gregg v. Barrett,* 771 F.2d 539 (D.C.Cir. 1985). . . . . . . . . . . . . . . . . . . . . .   5

*Herbert v. District of Columbia,* 808 A.2d 776 (D.C. 2002). . . . . . . . . . . . . .   5

*Higgs v. Higgs,* 472 A.2d 875 (D.C. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . .18, 19

*Howard v. Riggs Nat'l Bank*, 432 A.2d 701 (D.C. 1981). . . . . . . . . . . . . . . .   18

*Ideal Electronic Sec .Co., Inc. v. International Fidelity Ins. Co.,*
  129 F.3d 143 (D.C.Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

*Int'l City Mgmt. Ass'n Ret.Corp. v. Watkins*, 726 F.Supp. 1 (D.D.C. 1998) . . .   8, 9

*Koch v. Seventh Street Realty Corp.*, 205 Va. 65 (1964). . . . . . . . . . . . . . . . .   18

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994). . . . . .   5

*Leopooldo Fontanillas, Inc. v. Luis Lyala Colon Sucesores, Inc.,*
  283 F.Supp.2d 579 (D.P.R. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*Mercer Management Consulting v. Wilde,*
  920 F.Supp. 219 (D.D.C. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

*MicroStrategy Inc. v. Li,* 601 S.E.2d 580 (Va.2004). . . . . . . . . . . . . . . . . . . .   14

*Paul v. Howard Univ.,* 754 A.2d 297 (D.C. 2000). . . . . . . . . . . . . . . . . . . . . .   6

*PM Services Co. v. ODOI Associates,* 2006 WL 20382 (D.D.C. 2006). . . . . . .   *passim*

*Pratt v. University of the District of Columbia,* 691 A.2d 158 (D.C. 1997). . .   10

*R & A, Inc. v. Kozy Korner, Inc.*, 672 A.2d 1062 (D.C. 1995). . . . . . . . . . . . .   9

*Rickards v. Canine Eye Registration Foundation, Inc,*
  704 F.2d 1449 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Schiff v. American Ass'n of Retired Persons*, 697 A.2d 1193 (D.C. 1997). . . .   18

*Science Accessories Corp v. Summagraphics Corp.,*
    425 A.2d 957 (Del.1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Shea v. Fridley,* 123 A.2d 358 (D.C.1956). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Sheppard v. Dickstein, Shapiro, Morin & Oshinsky,*
    59 F.Supp.2d 27 (D.D.C.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Thermal Zone Products Corporation v. Echo Engineering Ltd.,*
    1993 WL 358148 (N.D.Ill.1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Trandes Corp. v. Guy F. Atkinson Co.* 996 F.2d 655 (4th Cir. 1992). . . . . . . . 15

*United States v. Cannon,* 642 F.2d 1373 (D.C.Cir.),
    *cert. denied,* 455 U.S. 999 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*Vincent v. Anderson,* 621 A.2d 367 (D.C. 1993). . . . . . . . . . . . . . . . . . . . . . . 18

*Virginia Pass & P.Co. v. Fisher,* 104 Va. 121 (1905). . . . . . . . . . . . . . . . . . . 18

*Wells v. United States,* 851 F.2d 1471 (D.C.Cir. 1988). . . . . . . . . . . . . . . . . . 5

*Wiggins v. District Cablevision, Inc.*, 853 F.Supp. 484 (D.D.C. 1994). . . . . 18, 19

## Statutes

D.C. Code §36-401(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

D.C. Code §36-401(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

Va. Code §59.1-336. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

## Rules

Fed.R.Civ.P 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

Fed.R.Civ.P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## Other

Restatement (Second) Agency §393 comment e. . . . . . . . . . . . . . . . . . . . . . 11

Restatement (Second) Torts §766C. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Restatement (Second) of Conflict of Laws §145. . . . . . . . . . . . . . . . . . . . . . 5

**INTRODUCTION**

Pursuant to Fed.R.Civ.P. 12(b)(6), the Defendant, Allynn Howe (Mr. Howe or Defendant), hereby moves to dismiss the Amended Complaint filed by Plaintiff Government Relations, Inc. (GRI or Plaintiff) on the grounds that it fails to state a claim upon which relief can be granted. The Amended Complaint baldly asserts that Defendant tortiously interfered with contract, breached a fiduciary duty, misappropriated and converted confidential information, and committed fraud. However, it utterly fails to allege the facts to suggest or from which the Court could infer the existence of each element of each of these causes of action. While GRI's disappointment over losing clients may be understandable, it is not sufficient to support its claims that Mr. Howe acted improperly.

Plaintiff has been given ample opportunity to correct the fatal deficiencies in its pleading. Its failure to do so ultimately reflects the undeniable conclusion that Plaintiff cannot prove any set of facts that entitles it to relief. As such, Defendant respectfully submits that the Amended Complaint must be dismissed in its entirety with prejudice.

**BACKGROUND**

Defendant Allynn Howe is a lobbyist who has developed extensive knowledge of the legislative process and substantial contacts in Congress through decades of advocacy work. Answer to the Amended Complaint and Counterclaims (Answer) ¶ 26. Mr. Howe's lobbying experience is not specific to any particular client or subject area and has allowed him to represent dozens of clients on a variety of subjects including transportation, city government, tax, trade, and health policy. *Id. a*t ¶ 26

In early 2000, Mr. Howe and GRI formed an alliance, after GRI represented that it had a thriving lobbying practice that would provide numerous opportunities for Defendant's business growth.  Answer ¶30.  In exchange for directing income that he earned from his preexisting clients to GRI, Mr. Howe received access to office space within the GRI suite, a flat fee from GRI for his GRI services and a promise of access to these new business opportunities.  Answer ¶ 26.   Under this arrangement, Mr. Howe continued to represent his preexisting clients and assisted in servicing GRI clients with minimal administrative support from GRI for either purpose.  *Id.*  In fact, although he occupied GRI office space, he acquired and paid for his own phone service, computer hardware and software, and similar resources to carry out his lobbying efforts.  *Id.*  He was not offered and did not receive any of the health or life insurance benefits extended to GRI employees.  *Id.*

By late 2004, Mr. Howe had become concerned about his relationship with GRI. Specifically, rather than provide Mr. Howe with the real business opportunities that GRI had represented were available, GRI instead delivered so-called "leads" for additional work, mostly in the form of publicly announced requests for proposals.  Even with those, GRI did not assist Mr. Howe with, or provide him any strategic insight into, their time-consuming preparation or presentation.  Mr. Howe did not secure a single interview as a result of GRI's bogus "leads."  In addition, Mr. Howe became increasingly aware of, and troubled by, GRI's questionable business practices, particularly, with its reporting of his reimbursed business expenses.

He nevertheless continued to maintain good relationships with the clients for whom he performed services, some of whom insisted that he, rather than any other GRI-

related individual, perform all lobbying efforts on their behalf.  Even so, in December

2004, GRI advised Mr. Howe that it was not happy with the services that he was

providing because his "expenses were going through the roof."  Despite the fact that GRI

did not pay for Mr. Howe's expenses that were not otherwise chargeable to a client, Mr.

Howe welcomed this opportunity to end his relationship in light of the aforementioned

concerns.  Nevertheless, he offered to spend the upcoming weeks transitioning his work

to GRI staff.  GRI rejected this offer and told Mr. Howe to leave the GRI premises

immediately.

## PROCEDURAL HISTORY

Plaintiff filed its original Complaint with the Superior Court of the District of

Columbia on May 6, 2005.  On May 31, 2005, Defendant removed the case to federal

district court on the basis of diversity jurisdiction, and on June 6, 2005, moved to

dismiss Counts 2-6 of the Complaint.  Defendant timely filed his Answer and

Counterclaims on June 16, 2005.  Plaintiff filed an opposition thereto on June 29, 2005,

to which Defendant timely replied on July 6, 2005.

Although briefing on the Motion to Dismiss was completed, Plaintiff thereafter

sought to supplement its opposition with an unsigned, undated and unnotarized affidavit

without proffering any reasons for its omission from previous pleadings or justification

for inclusion into the record of the irrelevant and inflammatory material contained

therein.  *See Plaintiff's Supplement to It's (sic) Opposition to Defendant's Motion

Dimiss* (sic).  Defendant strenuously objected to the unauthorized filing and asked that it

be stricken from the record.  *See Defendant Allynn Howe's Opposition to Plaintiff's

Unauthorized "Supplement To It's [sic] Opposition"* filed on July 11, 2005.

Three months later, the Plaintiff sought yet again to "supplement" his opposition to the Motion to Dismiss with a document purporting to "more clearly set forth" his claims and which Plaintiff alternatively characterized as a Motion to Amend. The proposed Amended Complaint eliminated Counts 2 (breach of implied contract), 3 (breach of quasi-contract), and 6 (misappropriation of plaintiff's salary payments) from the Original Complaint as well as abandoned Plaintiff's original requests for an accounting, unspecified and punitive damages, and attorney fees. In addition, it redesignated and modified the allegations in Counts 1 (tortious interference with contract), 4 (breach of confidential and fiduciary relationship) and 5 (misappropriation and conversion of trade secrets)[1]; added a new Count IV (FRAUD); and significantly increased the amount of money damages claimed from $200,000 to $3,200,000. Defendant Howe timely opposed the supplemental response and partially[2] opposed the Motion to Amend the Complaint. On May 6, 2006, the Court granted the Plaintiff's motion to amend its complaint, but noted that Counts 2 and 3 "are not reft with factual support" and that Count 4 "has not been pleaded with specificity as generally required of fraud claims." Order at 3. Consequently, the Court invited the Plaintiff to clarify these counts by permitting the filing of a second amended complaint to be submitted no later than May 23, 2006. *Id.* The Plaintiff has not availed itself of this opportunity. The Defendant therefore moves to dismiss the Amended Complaint in its entirety.

---

[1]  These are now designated as Count I (Tortious Interference With Contract), Count II (Breach of Fiduciary Duty), and Count III (Misappropriation and Conversion) respectively.

[2]  Defendant did not object to Plaintiff's request insofar as it sought to eliminate original Count 2 (breach of implied contract), Count 3 (breach of quasi-contract), and Count 6 (misappropriation of plaintiff's salary payments) and to drop its request for an accounting, unspecified and punitive damages, and attorney fees.

# ARGUMENT

## I. **Standard of Review**

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C.Cir. 2002).  In order to survive, a complaint must provide sufficient information to suggest the existence of the elements of a cause of action, or at least to permit an inference that these elements exist.  *Wells v. United States,* 851 F.2d 1471, 1473 (D.C.Cir. 1988)(citing *Gregg v. Barrett,* 771 F.2d 539, 547 (D.C.Cir. 1985)).  Dismissal is appropriate if the plaintiff cannot allege any "set of facts in support of [its] claim which would entitle [it] to relief."  *See Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Although the plaintiff is granted the benefit of inferences that can be derived from the facts alleged, a court "need not accept inferences . . . unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations." *Id.* [3]

---

[3] When deciding state law claims under diversity jurisdiction, a federal court must apply the choice of law rules of the state in which it sits.  *Ideal Electronic Sec .Co., Inc. v. International Fidelity Ins. Co.,* 129 F.3d 143, 148 (D.C.Cir. 1997).  For tort claims, the District of Columbia applies a government interest test to determine which state's law to apply.  *Herbert v. District of Columbia,* 808 A.2d 776, 779 (D.C. 2002).  The law of the state with the greater interest in the controversy will apply.  *Id.* To determine which state has a greater interest, courts consider four factors:  (1) "the place where the injury occurred;" (2) "the place where the conduct causing the injury occurred." (3) "the domicile, residence, nationality, place of incorporation and place of business of the parties." And (4) "the place where the relationship is centered." *Id. (quoting* Restatement (Second) of Conflict of Laws §145.)

Here, while GRI is incorporated in and has its principal place of business in the District of Columbia, Mr. Howe is a resident of Virginia and has his business office in Virginia.  The allegedly tortious acts giving rise to this litigation occurred in Virginia, outside of GRI's D.C. offices.  *See DAG Enterprises, Inc. v. Exxon Mobil Corp.,* 2001 WL 34778782 *5 (D.D.C. 2001) (In considering choice of law, "courts are instructed to give the greatest weight to the place of Defendants' allegedly tortious conduct.").   In any event, for purposes of this motion, Defendant submits that there is no true conflict of law

## II.   The Amended Complaint Must Be Dismissed In Its Entirety For Failure To State A Claim For Which Relief Can Be Granted.

Applying the foregoing principles here, the Court must dismiss GRI's Amended Complaint as legally deficient under Fed.R.Civ.P. 12(b)(6).  With regard to each alleged cause of action, GRI simply fails to set forth sufficient facts from which to infer the existence of each element.  Nor can GRI show any set of facts in support of its claims that would entitle it to relief.  Moreover, this absence of specific allegations deprives the Defendant of adequate notice as to the grounds for the claims.  The Amended Complaint must therefore be dismissed in its entirely for failure to state a claim under Rule 12(b)(6).

### A.   Plaintiff Fails To State a Claim for Tortious Interference With Contract

The four elements of a claim for tortious interference with contract in the District of Columbia[4] are: "(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach." *Furash & Co. v. McClave,* 130 F.Supp. 2d 48, 55-56 (D.D.C. 2001); *Business Equipment Center Ltd., v. De Jur-Amsco Corp.,* 465 F.Supp. 775, 778 (D.D.C. 1978); *CASCO Marina Development, L.L.C. v. District of Columbia Redevelopment Land Agency*, 834 A.2d 77, 83 (D.C. 2003) (quoting *Paul v. Howard Univ.,* 754 A.2d 297, 309

---

between the laws of Virginia and the District of Columbia, and that the alleged causes of action fail to state a claim under the controlling law of both jurisdictions.

[4]  In Virginia, a prima facie showing of the tort of intentional interference with contract comprises the following four elements:  "(1) existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor: (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Chaves v. Johnson,* 230 Va.112, 120 (1985).  Where a contract is terminable at will, the plaintiff must show not only that the interference was intentional, but also that the defendant used improper means, such as illegal or independently tortious conduct.  *Duggin v. Adams*, 234 Va. 221, 226-227 (1987).

(D.C. 2000); *Alfred A. Altimont, Inc. v. Chatelain, Saperton & Nolan,* 374 A.2d 284, 288

(D.C. 1977). *See also PM Services Co. v. ODOI Associates,* 2006 WL 20382 at *34

(D.D.C. 2006); *Mercer Management Consulting v. Wilde,* 920 F.Supp. 219, 239 (D.D.C.

1996).[5]   Thus, in order to survive this Motion to Dismiss, GRI must have alleged facts

that suggest, or from which could be inferred, the existence of a contract, the defendant's

knowledge of the contract, that the defendant intentionally and improperly procured the

breach of the contract, and that it suffered damages as a result of that breach. *PM*

*Services Co.*, 2006 WL 20382 at *34; *Furash*, 130 F.Supp.2d at 55-56; *Mercer,* 920

F.Supp. at 239.

GRI's complaint does not satisfy the pleading requirements with regard to any of

the four elements of its tortious interference claim.  As a threshold matter, it is

completely devoid of any facts that identify or describe a single contract or contractual

relationship with which Mr. Howe allegedly interfered.  Indeed, Count I is silent with

regard to the putative contract underlying GRI's tortious interference claim and, likewise,

with regard to defendant's knowledge of any such contract.  Nor does the Amended

Complaint allege whether and how such contract was breached.  In neglecting to provide

such basic information, GRI has utterly ignored its fundamental obligation to provide Mr.

Howe with "fair notice of what the plaintiff's claim is and the grounds upon which it

rests." *See Dura Pharmaceuticals, Inc. v. Broudo,* 125 S. Ct. 1627, 1630 (2005)(quoting

*Conley v. Gibson,* 355 U.S. 41, 47 (1957).

---

[5] In *PM Services Co.*, the claim involved a tortious interference with advantageous
business relationships. *Id.* at *34. *See also Mercer*, 920 F.Supp. at 239.  However, that
cause of action "runs 'parallel' " to one alleging interference with existing contracts. *PM*
*Services Co.,* 2006 WL 20382 at *34 (quoting *Brown v. Carr,* 503 A.2d 1241, 1247
(D.C.1986) (internal citations omitted).   Therefore, the same legal principles apply to
both. *Id.*

Furthermore, a tortious interference claim requires that the plaintiff show not only that the defendant interfered with a contract, but, also, that the interference was improper. *PM Services Co.,* 2006 WL 20382 at *34 ; *Furash,* 130 F.Supp.2d at 56; *Mercer,* 920 F.Supp. at 239.   Mere competitive activity on the part of the defendant is not by itself actionable interference.  *PM Services Co.*, 2006 WL 20382 at *35 (citing *Int'l City Mgmt. Ass'n Ret.Corp. v. Watkins*, 726 F.Supp.1, 6 (D.D.C. 1998); *Furash,* 130 F.Supp. 2d at 55-56; *Mercer,* 920 F.Supp.at 239 (internal citations omitted).

Rather, a defendant's motive to interfere with a contract is central to the claim and "a strong showing of intent is required to establish liability."  *Genetic Systems Corporation v. Abott Labs.,* 691 F.Supp. 407, 423 (D.D.C. 1998) (quoting *Rickards v. Canine Eye Registration Foundation, Inc.,* 704 F.2d 1449, 1456 (9th Cir. 1983).  In this regard, " 'a general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability.' " *PM Services Co,* 2006 WL 20382 at *35 (quoting *Bennett Enter., Inc. v. Domino's Pizza, Inc.* 45 F.3d 493, 499 (D.C.Cir. 1995).  Instead, the defendant's conduct must have been " 'more egregious, for example, [involving] libel, slander, physical coercion, fraud, misrepresentation, or disparagement.'"  *Id.* (quoting *Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F.Supp.2d 27, 33-34 (D.D.C.1999).  *See also Mercer,* 920 F.Supp. at 239 (finding that defendants did not have requisite wrongful intent at time of interference because they did not believe that they were restricted from competing).

Here, while the Amended Complaint recites that the Defendant acted "willfully, recklessly and negligently to take business away"[6] from GRI (Amended Complaint ¶ 10), it does not allege that he intentionally procured the breach of a GRI contract through wrongful or improper means.  Nor does it provide any facts from which it could be inferred that he acted outside the bounds of permissible competitive activity.  Thus, even assuming the truth of the claim that Defendant "willfully, carelessly, and recklessly convinced current clients, new clients and potential clients to leave the plaintiff's firm" (Amended Complaint ¶10), the alleged conduct is not actionable as a tortious interference with contract absent some allegation that it was "accomplished 'by wrongful or improper means, such as fraud.'" *Mercer,* 920 F.Supp. at 239 (quoting *International City Mgmt. Assn*, 726 F.Supp. at 6.)

Finally, GRI has not sufficiently alleged facts to support the fourth element of the tort, namely, damages.  Generally, a plaintiff must provide some "reasonable basis" for the damages claimed. *See Garcia v. Llerena*, 599 A.2d 1138, 1142 (D.C. 1991); *see also R & A, Inc. v. Kozy Korner, Inc.*, 672 A.2d 1062, 1167-68 (D.C. 1995).  Here, however, GRI's broad claim that it "lost business and harmed [sic] financially and in its reputation," (Amended Complaint ¶11) and its demand of $1,000,000 in conjunction with Count I is based entirely on its assumption that any client who left GRI after Mr. Howe's departure would have renewed its GRI contract indefinitely but for Mr. Howe's action.  In this regard, Defendant submits, based upon his information and belief, that at all times

---

[6] The language used in the Amended Complaint suggests that GRI may be attempting to assert a negligence claim.  However, courts have generally not recognized liability for negligent interference with contract.  *See* Restatement (Second) Torts §766C.  The District of Columbia likewise has not recognized negligent interference with contractual relations.  *Furash*,130 F.Supp. at 56-57 (refusing to extend liability for tort of negligent interference).

relevant to this action, GRI's consulting contracts were for periods of one year or less, and provided for termination at will with a relatively short notice period. Any expectation that GRI clients would indefinitely renew their contracts or otherwise continue to do business with GRI beyond the contract period is pure speculation and is not sufficient to meet the burden of showing damages. *See Pratt v. University of the District of Columbia*, 691 A.2d 158, 159 (D.C. 1997).

In sum, GRI has not plead any facts in Count I that would suggest that it would be entitled to relief on its claim for tortious interference with contract. As such, the Court must dismiss Count I under Rule 12(b)(6) for failure to state a claim.

### B. Plaintiff Fails To State a Claim for Breach of Fiduciary Duty

Claims may be dismissed under Rule 12(b)(6) if not plead with the level of specificity necessary to provide the defendant with "fair notice" of its claims and the grounds upon which they are based. *See Dura Pharmaceuticals, Inc.,* 125 S.Ct. at 1630. Conclusory assertions of an essential element of a claim is not legally sufficient to provide adequate notice to a defendant of the claims asserted against him or her. *Id.* Here, Count II comprises nothing but conclusory assertions of a breach of a fiduciary duty and as such, provides legally insufficient notice of the grounds upon which it rests.

As a threshold matter, Mr. Howe maintains that the Amended Complaint does not sufficiently allege the underlying factual predicate of an employment relationship to support the duty element of this cause of action. But even if it did, Count II plainly lacks the necessary factual specificity with regard to the alleged breach such that it does not give Mr. Howe adequate notice of the grounds for this claim.

While an employment relationship may give rise to a duty of loyalty, " there is an off-setting policy 'recognized by the courts…of safeguarding society's interest in fostering free and vigorous competition in the economics sphere.' " *PM Services,* 2006 WL 20382 at *28 (quoting *Science Accessories Corp v. Summagraphics Corp.* 425 A.2d 957, 963 (Del.1980)(internal quotations omitted).   Delineating this privilege to compete, this Court has said that an employee can arrange to compete with his principal even before terminating employment, "provided no unfair acts are committed."  *Id.* (quoting *Mercer,* 920 F.Supp. at 233)(internal citation omitted).  Such acts include misappropriation of confidential information "peculiar to [the] employer's business and acquired therein."  *Id.* (quoting Restatement (Second) Agency §393 comment e.)  Other conduct that falls outside the privilege to complete is "overt" solicitation of the employer's customers and business opportunities.  *Id.* at *30 (quoting *Mercer,* 920 F.Supp. at 234.)[7]

Thus, to be liable for breach of fiduciary duty, an employee's allegedly competitive action must fall outside the scope of his or her privilege to compete.  *PM Services,* 2006 WL 20382 at *28.  Here, GRI alleges that Mr. Howe "did then and there …acted to take business away from his employer" (Amended Complaint ¶19), but fails to identify (1) what business was taken away; (2) when or where business was taken away; or (3) what actions were taken by Defendant to take such business away.

---

[7] Virginia likewise recognizes that an employee has the right to make arrangements to leave and ultimately compete with an employer without running afoul of his or her fiduciary duty. *See Feddeman v. Langdon Assoc.,* 260 Va. 35, 42 (2000)(citing *Science Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 962-63 (Del. 1980)). Conduct that may constitute a breach includes misappropriation of trade secrets, miuse of confidential information, solicitation of the employer's employees or clients. *Id.*

Without such factually specific allegations, there is no basis from which to infer that the Defendant's conduct exceeded his privilege to compete.

Similarly, in order to result in liability, an alleged misuse of the employer's information must necessarily involve information that is "peculiar" to its business interest. *Mercer,* 920 F.Supp. at 233. In this regard, publicly available information is not considered confidential for purposes of breach of fiduciary duty claim. *PM Services,* 2006 WL 20382 at * 29.

Here, GRI claims that Mr. Howe "accessed valuable trade secrets, confidential business information, client lists, insider knowledge and information." Amended Complaint ¶22. However, the Amended Complaint does not identify (1) any trade secrets, confidential business information, client list or insider knowledge or information that was allegedly accessed by the Defendant; (2) how Defendant accessed this information; (3) the way that this information was misused; or (4) any actions that were taken by GRI to maintain the confidentiality of this information. Without such details, the Court cannot infer that the information was sufficiently "peculiar" to GRI's business so as to support liability here. *Mercer,* 920 F.Supp. at 233. On the contrary, as a registered lobbying entity representing clients before the U.S. Congress and federal agencies, GRI and its principals are legally obligated to publicly disclose its clients. Consequently, its publicly available client list, by definition, cannot be considered confidential. *See PM Services,* 2006 WL 20382 at * 29.

In the same vein, while overt solicitation may give rise to a claim, an employee's continued contact with the employer's clients while preparing to compete does not alone constitute tortious conduct. *Mercer*, 920 F.Supp. at 234 ("Court finds

unreasonable and unrealistic the proposition that any client contact prior to leaving one's employment and starting a competing business constitutes breach.).  Here, GRI broadly alleges that Mr. Howe "failed to carry out the business of his employer… failed to work for his employer…[and] betrayed his employer" (Amended Complaint, ¶ 22(c),(e) and (f)), but alleges no facts as to when or how such acts or omissions occurred.  While claiming that Mr. Howe "convinced" clients to leave GRI and to join his firm (Amended Complaint ¶ 22(d)), GRI neglects to name a single current, new or potential client or to describe any actions that went beyond normal client contact. *Mercer*, 920 F.Supp. at 234.  Without such factual allegations, the pleadings in the Amended Complaint are fatally deficient.

In all of these respects, and more, the Plaintiff has completely failed to provide any of the details necessary to allow the Defendant to respond to the allegations in Count II.  GRI did not avail itself of the opportunity extended by the Court in its Order of May 6, 2006 to correct the pleading deficiencies in Count II.  Therefore, Defendant urges the Court to dismiss Count II under Rule 12(b)(6).

### C.   Plaintiff Fails To State a Claim for Misappropriation and Conversion

Count III alleges that the Defendant "did then and there misappropriated client lists, confidential information, and trade secrets and converted them to his own use." Amended Complaint ¶28.   However, the claim suffers from the same legal deficiency that plagues Count II, namely, failure to plead with adequate specificity the necessary elements of a misappropriation or conversion claim.  *See Dura Pharmaceuticals, Inc. v. Broudo,* 125 S.Ct. at 1630.

In the District of Columbia, "misappropriation" is statutorily defined, in pertinent part, as the disclosure or use of a trade secret of another without consent by a person who used improper means to acquire knowledge of the trade secret or had reason to know that the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." D.C. Code §36-401(2). The term "trade secret" is likewise statutorily defined as meaning

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> > (A) Derives actual or potential independent economic value, from not being generally known to, and not being readily ascertainable by, proper means by another who can obtain economic value from its disclosure or use; and
> >
> > (B) Is the subject of reasonable efforts to maintain its secrecy.

D.C. Code §36-401(4).[8]

Courts have consistently held that a plaintiff asserting misappropriation of trade secrets must identify what trade secrets were allegedly misappropriated in order to make out a viable claim. For instance, in *Thermal Zone Products Corporation v. Echo Engineering Ltd.,* 1993 WL 358148 (N.D.Ill.1993), the plaintiff alleged that the defendant had misappropriated trade secrets which were incorporated in "3000 pages of confidential technical information, including drawings, plans and specifications" relating to the manufacture of cooking ovens. The court granted the defendants' motion to dismiss the claim holding that while

---

[8] In Virginia, a trade secret claim is governed by the same principles that apply in the District of Columbia. *See e.g., MicroStrategy Inc. v. Li,* 268 Va. 249, 262-263 (2004). *See also* VA. Code §59.1-336.

> Plaintiffs have made blanket generalizations regarding the information and documentation of the cooking ovens, they have failed to specify with any exactitude which pieces of information actually constitute trade secrets. In order for this court to attempt to categorize the alleged material as a trade secret, it is necessary for the court to be directed as to how this information is unique and protected. The necessary detail required in pleading a cause of action…is not present in the complaint.

*Id.* at *5. *See also Leopooldo Fontanillas, Inc. v. Luis Lyala Colon Sucesores, Inc.,* 283 F.Supp.2d 579, 589 (D.P.R. 2003)(granting motion to dismiss misappropriation of trade secrets claim with prejudice, finding complaint "devoid of any allegations whatsoever regarding what trade secretes were appropriated."); *Analog Devices, Inc. v. Michalski,* 579 S.E.2d 449, 453 (Ct.App.N.C.2003) ("It is generally accepted that a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur."); *Trandes Corp. v. Guy F. Atkinson Co.* 996 F.2d 655, 661 (4th Cir. 1992)(under Virginia law, the "alleged trade secret must be described in sufficient detail to establish each element of a trade secret.")

By contract, in the instant case, GRI's Amended Complaint is completely devoid of any specific information regarding the trade secret allegedly misappropriated by the Defendant. GRI has not, and we submit, cannot as a matter of law properly allege the existence of any valid trade secret, as that term has been defined, that Mr. Howe could have appropriated. But assuming *arguendo* that GRI's client list is the putative trade secret, Defendant submits that this Count must nevertheless be dismissed for failure to state a claim. GRI's legal obligation as a registered lobbyist before the U.S. Congress to publicly disclose its clients precludes it from asserting any set of facts that support the

claim that the identity of these very same clients is somehow confidential or a trade secret.

In addition, a trade secret must be subject to reasonable efforts to keep the information secret.  The Amended Complaint does not describe any efforts make to keep the information secret, such as the existence of a confidentiality agreement.  *See* D.C. Code §36-401(4) and Va. Code §59.1-336.   Such allegations are fundamental and necessary elements of a legitimate misappropriation trade secrets claims.  In their absence, Count III must be dismissed.

Count III also alleges conversion in addition to the misappropriation of confidential information and trade secrets.  Conversion is "any unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto."  *Shea v. Fridley,* 123 A.2d 358, 361 (D.C.1956).[9] *See also Furash v. McClave¸* 130 F.Supp. at 58.   However, when the initial possession of the property is lawful "a demand for its return is necessary to render [the] possession unlawful and to show its adverse nature."  *Id.* Similarly, a plaintiff who retains the original or copies of the documents cannot claim conversion for the reason that the owner has not been deprived of their use.  *Furash*, 130 F.Supp.at 58.

In this case, GRI can state no set of facts that would give rise to a conversion action.  First, the information that Mr. Howe learned in the course of his association with GRI would be information that he legally obtained.  As such, GRI cannot allege any facts

---

[9] The elements for conversion in Virginia are analogous to those in the District of Columbia.  *See Economopoulos v. Kolaitis*, 528 S.E.2d 714, 719 (Va. App.2000)(*citing Credit Corp. v Kaplan,* 198 Va. 67, 75-76 (1956) ("Conversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights.")

to show that he somehow unlawfully assumed or exercised the right of ownership over any confidential information or trade secrets. *See Shea v. Fridley,* 123 A.2d at 361.

Second, GRI has not and cannot allege that it has been deprived of its use or demanded its return. *See Furash,* 130 F.Supp. at 58. On the contrary, GRI has at all times retained access to the same information about clients, contacts, and its own business that it had before Mr. Howe left. Moreover, GRI can still use this same information to try to win contracts with these clients. Any alleged post-departure contact by the Defendant with former GRI clients does not preclude GRI from lawfully pursuing those clients or using the information to which Mr. Howe had access. GRI thus maintains significant possessory rights over this "confidential" information and cannot state a claim for conversion.

Thus, with regard to Count III, GRI has completely failed to provide any of the details necessary to allow Mr. Howe to respond to the allegations therein or to meet the necessary elements of the cause of action asserted therein. *See Dura Pharmaceuticals, Inc. v. Broudo,* 125 S.Ct. at 1630. Despite being given an opportunity to correct the legal deficiencies in its original and amended pleading, GRI has chosen, instead, simply to reiterate them. The only reasonable conclusion to be drawn from this failure to conform its allegations to the pleading requirements is that there is, in fact, no set of facts that GRI can allege that would entitle it to relief on its claim of misappropriation and conversion. Therefore, Defendant urges the Court to dismiss Count III under Rule 12(b)(6).

### D.   Plaintiff Fails To State a Claim for Fraud

GRI's failure to meet the specific pleading requirements for fraud under District of Columbia law and the Federal Rules of Civil Procedure dictates the dismissal of its

fraud count.   A cause of action claiming fraud requires that the plaintiff plead with particularity facts showing a (1) false representation (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with intent to deceive and (5) action is taken on reliance upon the representation.  *See D'Ambrosio v. Colonade Council of Unit Owners*, 717 A.2d 356, 360-361 (D.C. 1998)(citing *Vincent v. Anderson*, 621 A.2d 367, 372 (D.C. 1993); *Higgs v. Higgs,* 472 A.2d 875, 876 (D.C. 1984); *Bennet v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977), *cert. denied,* 434 U.S. 1034 (1978). *See also Schiff v. American Ass'n of Retired Persons*, 697 A.2d 1193 (D.C. 1997); *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 706 (D.C. 1981)(plaintiff must allege damages from actions taken in reliance on the misrepresentations or willful omissions of the defendant).  *See also. Calvetti v. Antcliff*, 346 F. Supp. 2d 92 (D.D.C. 2004)(citations omitted).[10]

In addition, Rule 9(b) of the Federal Rules of Civil Procedure mandates that  "in all averments of fraud or mistake, the circumstances constituting fraud shall be stated with particularity."  The D.C. Circuit has elaborated upon this pleading requirement for fraud, asserting that it "[n]ormally means the pleader must state the time, place and content of the false misrepresentation, the fact misrepresented and what was retained or given up as a consequence of the fraud."  *United States v. Cannon*, 642 F.2d 1373, 1385 (D.C.Cir.), *cert. denied,* 455 U.S. 999 (1982).  The district court has likewise held that the special pleading requirement for fraud under Rule 9 means that "a pleader 'must allege such facts as will reveal the existence of all the requisite elements of fraud.'"  *Wiggins v.*

---

[10] Virginia has long recognized that "fraud is a conclusion of law from facts, and 'it is a well settled rule of pleading, both at law and in equity, that the facts out of which the fraud arises must be alleged as well as proved to justify relief on that ground.' " *Koch v. Seventh Street Realty Corp.*, 205 Va. 65, 71 (1964)(quoting *Virginia Pass. & P. Co. v. Fisher*, 104 Va. 121, 132 (1905))

*District Cablevision, Inc.*, 853 F.Supp. 484, 498 (D.D.C. 1994)(internal citations omitted).

GRI has not alleged with particularity any facts, which if proven, would constitute a single element of fraud. Indeed, with the exception of ¶s 33 and 34, the broad averments in the proposed Count IV (¶s 33-41) merely repeat almost verbatim the general allegations contained in the previous counts under tortious interference, breach of fiduciary duty and misappropriation of confidential information.[11] With ¶33 being a general incorporation clause, the only assertion in the entire Count IV that is not primarily a reiteration of previous allegation unrelated to fraud is ¶34, which states that "at the times and place aforesaid, the Defendant, HOWE, was accessing trade secrets, client lists and other confidential information, he was accepting a salary to work on behalf of his employer and to expand the business of his employer." Amended Complaint ¶34.

Even viewed liberally, there is simply no basis upon which to construe the statement in ¶34 as alleging the elements of fraud, namely that the Defendant knowingly made a false and material representation with the intent to deceive and that Plaintiff took action upon that misrepresentation. *See Higgs v. Higgs,* 472 A.2d at 876 (D.C. 1984). Moreover, none of the fraud allegations identify the "time, place and content of the false misrepresentation, the fact misrepresented and what was retained or given up as a consequence of the fraud" with the necessary specificity to satisfy the mandate of

---

[11] ¶s 35-36 repeat the statements set forth in ¶s 17-18 under Count II (breach of fiduciary duty) ¶s 26-27 under Count III (Misappropriation and Conversion). Likewise, the language in ¶s 37-41 is virtually the same as that which appears in ¶s 10-14 under Count I (tortious interference with contract), in ¶s 19-23 under Count II (breach of fiduciary duty), and in ¶s 28-32 under Count III (Misappropriation and Conversion).

Fed.R.Civ.P 9.  *See United States v. Cannon*, 642 F.2d at 1385.   Under these

circumstances, the Court must conclude that the proposed Count IV must be dismissed

for failure to state a claim.

### CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant, Allynn Howe, respectfully

requests that Plaintiff's Amended Complaint be dismissed with prejudice.

Respectfully submitted,

**/s/ Anne M. Wagner**
Anne M. Wagner, D.C. Bar No.
820 First Street, NE, Suite 580
Washington, D.C. 20002
(202) 512-3836
(202) 512-7522 (fax)

**/s/ Todd A. Bromberg**
Todd A. Bromberg, D.C. Bar No. 472554
Wiley Rein & Fielding LLP
1776 K Street NW
Washington, DC  20006
 (202) 719-7000
 (202) 719-7049 (fax)