## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GOVERNMENT RELATIONS INC.,

    Plaintiff/Counterdefendant,

    v.

ALLYNN HOWE,

    Defendant/Counterclaimant.

Civil Action No. 05–1081 (CKK)

### MEMORANDUM OPINION
(January 24, 2007)

Presently before the Court are Defendant-Counterclaimant (hereinafter "Defendant")

Allynn Howe's [18] Motion to Dismiss; Plaintiff-Counterdefendant (hereinafter "Plaintiff")

Government Relations, Inc.'s [21] Motion to Enlarge Time; and Plaintiff's [24] Motion to

Amend Complaint Nunc Pro Tunc. Based on the aforementioned motions and related filings

thereto, prior orders in the instant case, and the relevant statutes and case law, the Court shall

DENY Plaintiff's [24] Motion to Amend Complaint Nunc Pro Tunc, DENY Plaintiff's [21]

Motion to Enlarge Time, and GRANT Defendant's [18] Motion to Dismiss. The Court shall

DISMISS WITH PREJUDICE Plaintiff's Amended Complaint in its entirety. Defendant's

counterclaims against Plaintiff remain. Defendant/Counterclaimant shall file a notice with the

Court by February 7, 2007, as to whether he plans to proceed with his counterclaims.

### I. BACKGROUND

Plaintiff, Government Relations Inc., filed a Complaint in this case against Defendant,

Allynn Howe,[1] in the Superior Court of the District of Columbia, which was removed to this

---

[1] Defendant indicated in his Counterclaim that he is a registered lobbyist. *See* [4] Def.'s Answer/Counterclaim ¶¶ 26, 28. Plaintiff admitted that Defendant "has worked as a lobbyist."

Court on May 31, 2005. Defendant filed a [2] Motion to Dismiss Counts 2 through 6 of the Complaint on June 7, 2005, which put Plaintiff on notice as to Defendant's perceptions of some of the infirmities in Plaintiff's Complaint. Defendant also filed an [4] Answer and Counterclaim on June 16, 2005. Plaintiff filed an Answer to Defendant's Counterclaim on July 6, 2005. Plaintiff further filed a [12] Motion to Amend Complaint on October 13, 2005. In the Amended Complaint filed by Plaintiff, Plaintiff voluntarily dropped Counts 2, 3, and 6 of its original complaint, modified Counts 1, 4, and 5 of its original complaint, and added a fraud count.

On May 9, 2006, the Court issued an [15] Order granting Plaintiff's [12] Motion to Amend Complaint and denying without prejudice [2] Defendant Allynn Howe's Motion to Dismiss. However, despite the fact that Plaintiff had already amended its complaint once in an attempt to bolster its claims, the Court's Order indicated "that Counts 2 and 3 of the Amended Complaint are not reft with factual support, and the Court additionally notes that Count 4 of the Amended Complaint has not been pleaded with specificity as generally required of fraud claims . . . . [T]he Court will allow Plaintiff to file a final, Second Amended Complaint if it so chooses, with the limitation that the Second Amended Complaint should only serve to clarify Counts 2, 3, and/or 4 of the Amended Complaint at this time." [15] Order at 3. Specifically, "Plaintiff may file a Second Amended Complaint if it so chooses in order to more clearly set forth support for Claims 2, 3, and/or 4 of its Amended Complaint by May 23, 2006. *There will be no extensions to this deadline*, and no additional amendments will be permitted as to the same Counts[.]" *Id.* at 4 (emphasis added). The Court further indicated that if "Defendant chooses to file a motion to dismiss related to the adopted Amended Complaint or the Second Amended Complaint if one is

---

[9] Pl.'s Answers to Counterclaim ¶ 2.

2

filed by the deadline above, the Parties shall abide by the following briefing schedule:

Defendant's motion to dismiss is due by June 9, 2006; Plaintiff's opposition is due by June 23,

2006; Defendant's reply is due by July 7, 2006[.]" *Id.*

As Plaintiff did not file a Second Amended Complaint by May 23, 2006, Defendant filed

a [18] Motion to Dismiss on June 9, 2006, in accordance with the briefing schedule set forth by

the Court. Plaintiff did not file an opposition thereto on June 23, 2006; rather, Plaintiff instead

filed Plaintiff's [21] Motion to Enlarge Time on June 23, 2006, requesting fourteen additional

days in which to respond to Defendant's Motion to Dismiss.

In Plaintiff's [21] Motion to Enlarge Time, Plaintiff's counsel claims that he "found

Defendant's Motion to Dismiss the Amended Complaint on the electronic view mechanism

available at the Court the past two (2) years" on June 21, 2006, because 1) "[h]e had traveled to

his daughter's college graduation in Los Angeles and there stayed at a European Style hotel (the

Hilgard House) that had no computers available"; 2) he was not served by mail; 3) he "had

charged a paralegal with the duty of monitoring his Federal Court cases (on the computer)" who

"fell ill with a diabetic problem"; and 4) he "had three (3) Court hearings on his return." Pl.'s

Mem. to Enlarge Time at 1.

Defendant filed an Opposition to Plaintiff's Motion to Enlarge Time on June 27, 2006. In

Defendant's Opposition, Defendant argues that "Plaintiff . . . has utterly failed to show cause for

extending the time period for opposing the Motion to Dismiss. Instead, it has proffered dubious

and unsupported excuses, none of which, alone or together, constitute cause for not filing a

timely response to a pending dispositive motion." Def.'s Opp'n to Pl.'s Mot. to Enlarge Time at

1. Defendant argues in his opposition that Plaintiff has not shown cause to enlarge the time for

3

filing a response pursuant to Federal Rule of Civil Procedure 6(b)(1), because 1) the ECF Notice

of Electronic Filing for Defendant's Motion to Dismiss shows that Plaintiff's counsel received

electronic notification thereof from the Court; 2) the college graduation that Plaintiff's counsel

allegedly attended took place during the weekend of June 16-18, 2006, well after Defendant's

Motion to Dismiss was filed on June 9, 2006; 3) the hotel at which Plaintiff's counsel indicated

he had stayed both provided data jacks for internet usage and pointed guests to nearby facilities

to access the internet; 4) Plaintiff's counsel never indicates that his paralegal's medical condition

"prevented her from notifying [Plaintiff's counsel] of the filing of Defendant's Motion to

Dismiss"; 5) Plaintiff's counsel "retains responsibility" for checking the docket; and 6) Plaintiff's

counsel need not be served by mail, as pursuant to Local Civil Rule 5.4(d)(1), "[e]lectronic filing

of any document operates to effect service of the document on counsel . . . ." *Id.* at 2-5.

Defendant argues that the Court should treat Defendant's Motion to Dismiss as conceded

pursuant to Local Civil Rule 7(b), citing *Ramseur v. Barreto*, 216 F.R.D. 180, 182 (D.D.C.

2003). On July 3, 2006, the Court entered a minute order indicating that "Plaintiff shall have

until close of business on Monday, July 3, 2006 to submit a Reply to the arguments raised in [22]

Defendant's Memorandum in Opposition to Plaintiff's Motion to Enlarge Time." The Court

notes that Plaintiff never filed a reply to its Motion to Enlarge Time and the above assertions

made by Defendant. The Court also notes that Plaintiff never filed an Opposition to Defendant's

Motion to Dismiss.

On July 5, 2006, well after the May 23, 2006 deadline for filing a Second Amended

Complaint set by the Court, and well after Defendant filed his [18] Motion to Dismiss, Plaintiff

filed a [24] Motion to Amend Complaint Nunc Pro Tunc, attaching a Second Amended

4

Complaint thereto. In Plaintiff's [24] Motion to Amend, Plaintiff states:

> [T]he Court allowed the Plaintiff to amend its Complaint such that the claims for relief are more clearly set forth. The Court set a deadline of May 26, 2006.[2]  First, Counsel changed his email address and did not get a copy of the Order. Second, counsel was out of town, on the West Coast, giving a seminar during this time frame, and then at his daughter's college graduation.

[24] Pl.'s Mot. to Amend ¶ 3.

On July 11, 2006, Defendant filed [26] Defendant's Memorandum in Opposition to Plaintiff's Motion to Amend Complaint Nunc Pro Tunc. In Defendant's Opposition to Plaintiff's Motion to Amend Complaint Nunc Pro Tunc, Defendant argues that Plaintiff has failed to demonstrate "excusable neglect" pursuant to Federal Rule of Civil Procedure 6(b)(2), such that the Court should not grant Plaintiff's post-deadline request for an extension of time to file its Second Amended Complaint. Def.'s Opp'n to Pl.'s Mot. to Amend Compl. Nunc Pro Tunc at 1. In addition to repeating the arguments raised in Defendant's Opposition to Plaintiff's prior Motion to Extend Time, Defendant adds that 1) Plaintiff's counsel is required to notify the Court within 10 days of any address change pursuant to Local Civil Rule 5.1(e)(1), but regardless Plaintiff's counsel's e-mail address to which the Notice of Electronic Filing with respect to the Court's May 9, 2006 Order and the e-mail address receipt from Plaintiff's own Motion to Amend Complaint Nunc Pro Tunc are one and the same; and 2) Plaintiff's counsel never alleged in his Motion to Extend Time that he had not received the Court's May 9, 2006 Order. *Id.* at 2-3. Defendant argues that "the Court should reject the instant request to amend the complaint because it reflects undue delay, bad faith and dilatory motive on the part of GRI." *Id.* at 4. The

---

[2] The Court notes that the deadline set by the Court for Plaintiff's filing of a Second Amended Complaint was May 23, 2006, not May 26, 2006.

Court notes that Plaintiff did not file any Reply thereto.

## II. LEGAL STANDARDS

*A.    Federal Rule of Civil Procedure 6(b)*

Pursuant to Federal Rule of Civil Procedure 6(b),

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect[.]

Fed. R. Civ. P. 6(b). A district court's decision pursuant to Rule 6(b) is reviewed for abuse of discretion. *See In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003). With respect to the distinction between Rule 6(b)(1), and Rule 6(b)(2), the instant circuit observed:

> In *Lujan v. National Wildlife Federation*, the Supreme Court noted the distinction between this provision and Rule 6(b)(1), which allows a court to grant an extension if a "request" is made before the time for filing expires. 497 U.S. 871, 896 n.5, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). By contrast, the Court emphasized that post-deadline extensions may be granted only "for cause shown" and "upon motion." *Id.* at 896, 110 S. Ct. 3177.

*Smith v. District of Columbia*, 430 F.3d 450, 456 (D.C. Cir. 2005). In determining what constitutes "excusable neglect" pursuant to Rule 6(b)(2), the Court may consider the danger of prejudice to the other party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay (including the movant's control, or lack thereof, with respect to the delay), and whether or not the movant acted in good faith. *See id.* at 457 n.5 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)).

6

B.     *Local Civil Rule 7(b)*

Pursuant to Local Civil Rule 7(b), "Within 11 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such memorandum is not filed within the prescribed time, the Court may treat the motion as conceded." D.C. LCvR 7(b). Discretion to determine whether a motion is treated as conceded for failure to timely file an opposition "lies wholly with the district court" *F.D.I.C. v. Bender*, 127 F.3d 58, 67 (D.C. Cir. 1997). "'Where the district court relies on the absence of a response as a basis for treating [a] motion as conceded, we honor its enforcement' of Local Rule 7(b)." *Harrison v. Snow*, 2004 WL 2915335 (D.C. Cir.) (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997)).

C.     *Federal Rule of Civil Procedure 15(a)*

Under Federal Rule of Civil Procedure 15(a), once a responsive pleading is served, a party may amend its complaint only by leave of the court or by written consent of the adverse party. *Id.*; *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). The grant or denial of leave to amend is committed to the sound discretion of the district court. *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). "Reversal of a district court's decision not to permit amendment is thus appropriate only if there has been an abuse of discretion." *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C. Cir. 1987).

The court must, however, heed Rule 15's mandate that leave is to be "freely given when justice so requires." *Id. See also Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1083 (D.C. Cir. 1998). Generally, "[i]f the underlying facts or circumstances relied

7

upon by a plaintiff may be a proper subject of relief, [plaintiff] ought to be afforded an

opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182, 83 S. Ct. 227. As such,

"[a]lthough the grant or denial of leave to amend is committed to a district court's discretion, it is

an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue

delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous]

amendments . . . [or] futility of amendment.'" *Firestone*, 76 F.3d at 1208 (quoting *Foman*, 371

U.S. at 182, 83 S. Ct. 227).

## III. DISCUSSION

### A.    *Plaintiff's Motion to Amend Complaint Nunc Pro Tunc*

The Court, via its Order of May 9, 2006, stated "that Plaintiff may file a Second

Amended Complaint if it so chooses in order to more clearly set forth support for Claims 2, 3,

and/or 4 of its Amended Complaint by May 23, 2006. *There will be no extensions to this*

*deadline*, and no additional amendments will be permitted as to the same Counts[.]" [15] Order

at 4 (emphasis added). With respect to Plaintiff's untimely request to amend its complaint a

second time, Plaintiff's counsel claims that "First, Counsel changed his email address and did not

get a copy of the Order. Second, counsel was out of town, on the West Coast, giving a seminar

during this time frame, and then at his daughter's college graduation." [24] Pl.'s Mot. to Amend

¶ 3.

The Court finds that Plaintiff's counsel's unsubstantiated excuses amount to "dilatory

motive" "undue delay" and "bad faith" pursuant to Federal Rule of Civil Procedure 15(a), such

that the Court shall deny Plaintiff's [24] Motion to Amend Complaint Nunc Pro Tunc. First of

all, the Court notes that the Court's Order dated May 9, 2006, provided both a firm deadline for

8

the filing of a Second Amended Complaint and a briefing schedule, which was followed by

Defendant, such that Plaintiff's untimely filing constitutes Plaintiff's second attempt to nullify a

pending Motion to Dismiss by amending its complaint, suggesting dilatory motive for the delay.

Second, Plaintiff's counsel's indication that he was on the West Coast (and for an unspecified

time period) does not excuse his unduly late filing. Third, counsel clearly accessed the docket on

June 21, 2006 (per his own representation in Plaintiff's [21] Motion to Extend Time) such that by

his own admission, he was able to see the Court's May 9, 2006 Order approximately 15 days

before he filed his [24] Motion to Amend Complaint Nunc Pro Tunc. Finally, and most

egregiously, the Court finds Plaintiff's counsel's representation that he "did not get a copy" of

the Court's May 9, 2006 Order to be in bad faith. Pursuant to Local Civil Rule 5.4(b)(6),

"counsel . . . are responsible for monitoring their e-mail accounts, and, upon receipt of notice of

an electronic filing, for retrieving the noticed filing." LCvR 5.4(b)(6). "The requirement of a

certificate or other proof of service is satisfied by the automatic notice of filing sent by the

CM/ECF software to counsel or pro se parties who have obtained CM/ECF passwords." LCvR

5.4(d)(2). Plaintiff's counsel does not refute Defendant's statement that the Court's May 9, 2006

Order was sent to the same e-mail address to which Plaintiff's own [24] Motion to Amend

Complaint Nunc Pro Tunc was noticed. Furthermore, the Court made an inquiry of Joe Burgess,

the Operations Analyst for United States District Court for the District of Columbia, with respect

to Plaintiff's counsel's representations. In a signed statement, attached to this Opinion as Exhibit

A, Mr. Burgess stated that after viewing the records and receipts for all transactions in the instant

case, "[t]he receipts support that David E. Fox [counsel for Plaintiff] has never changed his email

address in the system since the beginning of this case." Furthermore, "at [the Court's] request,

9

[Mr. Burgess] examined the bounced emails for May 9, 2006[] (#15 Order denying without prejudice motion to dismiss; granting motion to amend) and July 3, 2006 (Minute Order). There were no bounced emails for these dates relating to this case for either counsel." Ex. 1 (Burgess Memorandum).[3]  In sum, the Court finds Plaintiff's counsel's untimely filing of a second amended complaint to be the product of an unacceptable combination of undue delay, dilatory motive, and bad faith in light of the above.

As the Court's May 9, 2006 Order required Plaintiff to file a Second Amended Complaint by May 23, 2006 with no extensions, the Court also holds that Plaintiff's request, while not made pursuant to Federal Rule of Civil Procedure 6(b)(2), nonetheless does not meet the requirements of Federal Rule of Civil Procedure 6(b), which states: "When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect[.]" Fed. R. Civ. P. 6(b).  No such motion was made pursuant to Federal Rule of Civil Procedure 6(b) in the instant case.  In light of this and the above findings with respect to Plaintiff's Motion to Amend Complaint Nunc Pro Tunc, the Court does not find that Plaintiff has demonstrated excusable neglect for the post-May 23, 2006 filing of Plaintiff's Motion to Amend Complaint.

Accordingly, the Court shall deny Plaintiff's Motion to Amend Complaint Nunc Pro

---

[3]  The attachments referenced in the Burgess Memorandum, including the "receipts for all transactions in this case" and "attached test data base example for CA 03-3030," are too voluminous to attach to this Opinion and may be found in the Clerk's Office in the case file for the instant case.

Tunc.

B.      *Plaintiff's Motion to Extend Time to File an Opposition to Defendant's Motion to Dismiss*

In Plaintiff's [21] Motion to Enlarge Time, requesting fourteen additional days in which to respond to Defendant's Motion to Dismiss, Plaintiff's counsel claims that he "found Defendant's Motion to Dismiss the Amended Complaint on the electronic view mechanism available at the Court the past two (2) years" on June 21, 2006, because 1) "[h]e had traveled to his daughter's college graduation in Los Angeles and there stayed at a European Style hotel (the Hilgard House) that had no computers available"; 2) he was not served by mail; 3) he "had charged a paralegal with the duty of monitoring his Federal Court cases (on the computer)" who "fell ill with a diabetic problem"; and 4) he "had three (3) Court hearings on his return." Pl.'s Mem. to Enlarge Time at 1. In Defendant's Opposition thereto, Defendant argues that Plaintiff has not shown cause to enlarge the time for filing a response pursuant to Federal Rule of Civil Procedure 6(b)(1), because 1) the ECF Notice of Electronic Filing for Defendant's Motion to Dismiss shows that Plaintiff's counsel received electronic notification thereof from the Court; 2) the college graduation that Plaintiff's counsel allegedly attended took place during the weekend of June 16-18, 2006, well after Defendant's Motion to Dismiss was filed on June 9, 2006; 3) the hotel at which Plaintiff's counsel indicated he had stayed both provided data jacks for internet usage and pointed guests to nearby facilities to access the internet; 4) Plaintiff's counsel never indicates that his paralegal's medical condition "prevented her from notifying [Plaintiff's counsel] of the filing of Defendant's Motion to Dismiss"; 5) Plaintiff's counsel "retains responsibility" for checking the docket; and 6) Plaintiff's counsel need not be served by mail, as pursuant to Local Civil Rule 5.4(d)(1), "[e]lectronic filing of any document operates to effect

11

service of the document on counsel . . . ." *Id.* at 2-5. Plaintiff never filed a Reply to Defendant's Motion to Enlarge Time, nor any response to Defendant's assertions with respect to Plaintiff's counsel's misrepresentations to the Court with respect to the timing of his trip and his ability to access the internet during this time. In fact, in Plaintiff's later-filed Motion to Amend Complaint Nunc Pro Tunc, discussed in Section III(A) of this Opinion, Plaintiff's counsel essentially repeats his already-refuted excuse, stating "counsel was out of town, on the West Coast, giving a seminar during this time frame, and then at his daughter's college graduation." [24] Pl.'s Mot. to Amend ¶ 3.

Plaintiff's [21] Motion to Enlarge Time to respond to Defendant's Motion to Dismiss was filed on the day that Plaintiff's Opposition was due, such that Plaintiff's request was made pursuant to Federal Rule of Civil Procedure 6(b)(1). *See* Fed. R. Civ. P. 6(b)(1) ("When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . . ."). Normally, in light of the distinction made in *Lujan* between Rule 6(b)(1) and 6(b)(2), see *Lujan*, 497 U.S. at 896, 110 S. Ct. 3177, and the more lenient standard applied under Rule 6(b)(1), the Court would grant a request for extension of time in the instant posture. However, the Court does not consider "cause" to have been "shown" pursuant to Rule 6(b)(1) in light of the repeated and unrefuted misrepresentations made by Plaintiff's counsel to this Court as the basis for his Motion to Extend Time. "[C]ourts 'must trust and rely on lawyers' abilities to discharge their ethical obligations, including their duty of candor to the court'; otherwise, the adversary process,

12

the judicial system and the legal profession itself are in grave jeopardy." *Minebea Co., Ltd. v. Papst*, 374 F. Supp. 2d 231, 237 (D.D.C. 2005) (quoting *United States v. Rhynes*, 218 F.3d 310, 320 (4th Cir. 2000)). *See also* D.C. Rule of Prof. Conduct 3.3 ("Candor Toward the Tribunal"). Accordingly, the Court shall deny Plaintiff's Motion to Extend Time and accordingly assesses Defendant's pending Motion to Dismiss without any opposition filed by Plaintiff. The Court suggests that any frustrations Plaintiff may have with this outcome should not be legally directed toward the Court's decision in light of Plaintiff's counsel's misrepresentations and lack of candor to the Court, but toward Plaintiff's counsel himself.

    C.    *Defendant's Motion to Dismiss*

Pursuant to Local Civil Rule 7(b), "Within 11 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such memorandum is not filed within the prescribed time, the Court may treat the motion as conceded." Local Civil Rule 7(b). However, while the Court shall not permit Plaintiff to file an Opposition to Plaintiff's Motion to Dismiss for the reasons set forth in Section III(B) of this Opinion, the Court shall not only grant Defendant's Motion to Dismiss as conceded, but also shall assess the Motion to Dismiss on the merits without the aid of an opposition. In so doing, the Court finds that on the merits, it shall grant Defendant's [18] Motion to Dismiss Plaintiff's Amended Complaint in its entirety.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also*

*Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). While the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are not supported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276. Moreover, the court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See St. Francis Xavier Sch.*, 117 F.3d at 624; *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993). Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

The Court will consider the merits of Defendant's Motion to Dismiss each of Plaintiff's Counts as set forth in its Amended Complaint in turn. As this case is presently before the Court under diversity jurisdiction, the Court shall apply the choice of law rules from the District of Columbia. *See Ideal Elec. Sec. Co. v. Int'l Fidelity Insur. Co.*, 129 F.3d 143, 148 (D.C. Cir. 1997) ("When deciding state-law claims under diversity or supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit."). For tort claims, like those raised by Plaintiff, District of Columbia law employs a government interest test such that

14

the law of the state with the greater interest in the controversy will apply. *Herbert v. District of Columbia*, 808 A.2d 776, 779 (D.C. 2002). In determining which state has the greater interest, the court considers 1) "the place where the injury occurred;" 2) "the place where the conduct causing the injury occurred;" 3) the place where the relationship between the parties is centered, and 4) "the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* The Court notes that it accepts Plaintiff's representation in its Amended Complaint that "[a]ll events which gave rise to this cause of action took place in the District of Columbia," Am. Compl. ¶ 1, solely for the purposes of ruling on Defendant's Motion to Dismiss. Accordingly, although the Court notes that Defendant is a resident of the Commonwealth of Virginia as stated in Plaintiff's original complaint, Compl. ¶ 2, applying the above factors *in toto*, the Court will appropriately apply District of Columbia law to Plaintiff's claims at this juncture.

    1. Count 1: Tortious Interference with Contract

  In Count 1 of Plaintiff's Amended Complaint, Plaintiff alleges that while "it was the duty of the Defendant, HOWE, to act as an employee of GRI and to further the business of his employer," Defendant "acted to take business away from his employer and to bring that business to his own company which directly competes with that of his employer." Am. Compl. ¶¶ 9, 10. Plaintiff further states "[t]hat as a result of these actions, the Plaintiff, GRI, lost business and was harmed both financially and in its reputation[,]" *id.* ¶ 11, which it later describes as "serious damages, loss of clients, loss of reputation, and . . . loss of confidential information." *Id.* ¶ 14. Plaintiff "specifically" alleges that Defendant "[v]iolated the employer/employee relationship"; "accessed valuable trade secrets, confidential business information, client lists, insider knowledge and information"; "failed to carry out the business of his employer"; "convinced

current clients, new clients and potential clients to leave the plaintiff's firm and to join the Defendant's company"; "failed to work for his employer"; and "betrayed his employer." *Id.* ¶ 13(a)-(f). The only other factual predicate offered by Plaintiff in the Amended Complaint (which is applicable to all Counts) is the statement in the "Background" section that Defendant Howe was allegedly employed by Plaintiff until December 21, 2004; that Defendant, "as an employee of GRI, had access to valuable trade secrets, client lists, insider information, contacts, confidential information about plaintiff's clients and other unique business information"; and that Plaintiff was accepting a salary of $200,000. *Id.* ¶¶ 2-4. In Defendant's Motion to Dismiss, Defendant argues that "GRI's complaint does not satisfy the pleading requirements with regard to any of the four elements of its tortious interference claim" such that Defendant does not have "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Def.'s Mot. to Dismiss at 7 (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346, 125 S. Ct. 1627, 1634, 161 L. Ed. 2d 577 (2005) (internal quotation omitted)).

A claim for tortious interference with contract entails four elements under District of Columbia law: "'(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach.'" *CASCO Marina Dev., L.L.C. v. District of Columbia Redevelopment Land Agency*, 834 A.2d 77, 83 (D.C. 2003) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 309 (D.C. 2000) (footnote and citation omitted)). *See also PM Services Co. v. ODOI Assoc.*, 2006 WL 20382 at *34 (D.D.C. 2006); *Furash & Co. v. McClave*, 130 F. Supp. 2d 48, 55-56 (D.D.C. 2001); *Mercer Mgmt. Consulting*

16

*v. Wilde*, 920 F. Supp. 219, 239 (D.D.C. 1996).[4]

The Court finds that even an extremely deferential reading of Plaintiff's Amended Complaint reveals that Plaintiff has failed to plead "the existence of a contract[,]" "intentional procurement of a breach of the contract[,]" or "damages resulting from the breach" sufficient to state a claim of tortious interference with a contract. Tortious interference with a contract plainly requires interference with the contract of a third party. "[I]nterference with contractual relations . . . only arises, however, if there is interference with a contract between the plaintiff and some third party." *Bus. Equip. Ctr., Ltd. v. DeJur-AMSCO Corp.*, 465 F. Supp. 775, 788 (D.D.C. 1978). However, as Defendant indicates, Plaintiff has not specified in its Amended Complaint what "contract" it is alleging to be the subject of tortious interference. *See* Def.'s Mot. to Dismiss at 7 ("GRI's complaint . . . is completely devoid of any facts that identify or describe a single contract or contractual relationship with which Mr. Howe allegedly interfered."). If Plaintiff were properly bringing a claim of tortious interference with a contract, it would have specified with what third-party contract Plaintiff allegedly interfered. While Plaintiff has not so specified, if Plaintiff is suggesting that Defendant has somehow "interfered" with his own contract with Plaintiff, this allegation falls outside of the rubric of tortious interference with contract. Furthermore, Plaintiff never pleads any details regarding the nature of any "contract" between Plaintiff and Defendant, such as whether the Parties had any written or oral agreement

---

[4] While *PM Services*, *Furash*, and *Mercer* pertain to intentional interference with a prospective business advantage or business relationship, "[t]he tort of intentional interference with a prospective business advantage runs 'parallel to that for interference with existing contracts.'" *Brown v. Carr*, 503 A.2d 1241, 1247 (D.C. 1986) (quoting W. Prosser, Law of Torts § 130, at 952 (4th ed. 1971) (footnote omitted); citing *DeKine v. Dist. of Columbia*, 422 A.2d 981, 988 (D.C. 1980)).

and the terms of said agreement (such as a do-not-compete clause). Additionally, notwithstanding the fact that Plaintiff has not specified any contract as the subject of tortious interference in its Amended Complaint, Plaintiff plainly has not demonstrated that Defendant intentionally procured a breach of the contract. Intentionally procuring a breach of the contract requires "a strong showing of intent . . . to establish liability." *Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407, 423 (D.D.C. 1998) (internal quotation omitted). Intentional procurement of a breach must involve egregious conduct such as "libel, slander, physical coercion, fraud, misrepresentation, or disparagement." *See Shepard v. Dickstein, Shapiro, Morin & Oshinksy*, 59 F. Supp. 2d 27, 34 (D.D.C. 1999) (quoting *Genetic Sys.*, 691 F. Supp. at 423). Plaintiff has not pleaded any facts, but only broad allegations, regarding Defendant's conduct, let alone whether or not such unspecified conduct was egregious. Finally, Plaintiff has not pleaded any facts demonstrating that it has incurred any damages as a result of Defendant's conduct. Plaintiff merely speculates that Plaintiff suffered "serious damages, loss of clients, loss of reputation, and . . . loss of confidential information," Am. Compl. ¶ 14, but does not state any facts demonstrating such "serious" damages, any actual loss of clients, and indicators that Plaintiff has suffered a loss of reputation, nor any "confidential" information actually "lost." "[I]t should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharm.*, 544 U.S. at 347, 125 S. Ct. 1627. Accordingly, the Court shall grant Defendant's Motion to Dismiss with respect to Count 1 of Plaintiff's Amended Complaint, as Plaintiff has failed to state a claim of Tortious Interference with Contract against Defendant.

2.    <u>Count 2: Breach of Fiduciary Duty</u>

18

In Count 2 of Plaintiff's Amended Complaint, Plaintiff alleges that Defendant, "the public face of Plaintiff's company . . . in a position of trust with GRI . . . [and] paid to act in the best interests of his employer," breached his fiduciary duty to Plaintiff, "act[ing] to take business away from his employer, breaching his fiduciary duty and to bring that business to his own company which directly competes with that of his employer." Am. Compl. ¶¶ 17-19. Plaintiff repeats the alleged damages of loss of clients, loss of reputation, and loss of confidential information claimed in Count 1. *See* Am. Compl. ¶¶ 20, 23; *see also id.* ¶¶ 11, 14. Plaintiff also repeats its allegations set forth in Count 1 that Defendant "[v]iolated the employer/employee relationship"; "accessed valuable trade secrets, confidential business information, client lists, insider knowledge and information"; "failed to carry out the business of his employer"; "convinced current clients, new clients and potential clients to leave the plaintiff's firm and to join the Defendant's company"; "failed to work for his employer"; and "betrayed his employer." *Id.* ¶ 22(a)-(f). In Defendant's Motion to Dismiss, Defendant argues that "the Amended Complaint does not sufficiently allege the underlying factual predicate of an employment relationship to support the duty element of [breach of fiduciary duty] . . . [b]ut even if it did, Count II plainly lacks the necessary factual specificity with regard to the alleged breach such that it does not give Mr. Howe adequate notice of the grounds for this claim." Def.'s Mot. to Dismiss at 10.

Multiple recent cases in this jurisdiction have applied the common law principles and limitations of agency law into the field of corporate employment. *See, e.g., PM Services,* 2006 WL 20382; *Furash,* 130 F. Supp. 2d 48; *Riggs Inv. Mgmt. Corp. v. Columbia Partners,* 966 F. Supp. 1250 (D.D.C. 1997); and *Mercer,* 920 F. Supp. 219. Under this application, it has been

19

established that employees – especially managers, corporate officers, and directors – "owe 'an undivided and unselfish loyalty to the corporation' such that 'there shall be no conflict between duty and self interest.'" *Mercer*, 920 F. Supp. at 233 (quoting *Guth v. Loft*, 23 Del.Ch. 255, 5 A.2d 503, 510 (1939); *see also* Restatement (Second) of Agency § 387 ("Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters concerned with his agency."). Ultimately, "'an agent is subject to a duty not to compete with the principal concerning the subject matter of his agency.'" *Id.* (quoting Restatement (Second) of Agency § 393).

However, while "concern for the integrity of the employment relationship has led courts to establish a rule that demands of a corporate officer or employee an undivided and unselfish loyalty to the corporation," *Maryland Metals, Inc. v. Metzner*, 282 Md. 31, 382 A.2d 564, 568 (1978), "there is an off-setting policy 'recognized by the courts . . . of safeguarding society's interest in fostering free and vigorous competition in the economics sphere,'" *Sci. Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957, 963 (Del. 1980) (quoting *Maryland Metals*, 382 A.2d at 569). "[T]he law is clear that 'an agent can make arrangements or plans to go into competition with his principal before terminating his agency, provided no unfair acts are committed or injury done his principal.'" *Mercer*, 920 F. Supp. at 233 (quoting *Sci. Accessories Corp.*, 425 A.2d at 962). In general,

> [e]ven before the termination of the agency, [an employee] is entitled to make arrangements to compete, except that he cannot properly use confidential information peculiar to his employer's business and acquired therein. Thus, before the end of his employment, he can properly purchase a rival business and upon termination of employment immediately compete.

*Id.* (quoting Restatement (Second) of Agency § 393 comment e).

An employee's "privilege to compete is limited." *Riggs Inv. Mgmt. Corp.*, 966 F. Supp. at 1265. "'The right to make arrangements to compete is by no means absolute and the exercise of the privilege may, in appropriate circumstances, rise to the level of a breach of an employee's fiduciary duty of loyalty.'" *Sci. Accessories Corp.*, 425 A.2d at 965 (quoting *Maryland Metals*, 382 A.2d at 569-70). An employee's proper preparatory activities have been delineated as such:

> Prior to termination of employment, an officer may not solicit for himself or herself business which the position requires the employee to obtain for the employer. The officer must refrain from actively and directly competing with the employer for customers and employees, and must continue to exert his or her best efforts on behalf of his employer.

*Mercer*, 920 F. Supp. at 234 (quoting William W. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 856 (perm. ed. rev. vol. 1994)). "In preparing to compete, an employee may not commit wrongful acts, 'such as misuse of confidential information, solicitation of the firm's customers, or solicitation leading to a mass resignation of the firm's employees.'" *Furash*, 130 F. Supp. 2d at 53 (quoting *Mercer*, 920 F. Supp. at 234); *see also Sci. Accessories*, 425 A.2d at 965 (noting that "[e]xamples of misconduct which will defeat the privilege" to make arrangements to compete include "misappropriation of trade secrets"; "misuse of confidential information"; "solicitation of employer's customers prior to cessation of employment"; "conspiracy to bring about mass resignation of employer's key employees"; and "usurpation of employer's business opportunity"). "At the same time, failure to disclose plans to enter into competition is not itself necessarily a breach of fiduciary duty." *Mercer*, 920 F. Supp. at 234. Ultimately, various courts have recognized that "[t]he ultimate determination of whether an employee has breached his fiduciary duties to his employer by preparing to engage in a competing enterprise must be grounded upon a thoroughgoing examination of the facts of the

particular case." *Furash*, 130 F. Supp. 2d at 53; *Mercer*, 920 F. Supp. at 234; *Maryland Metals*, 382 A.2d at 570; *Sci. Accessories*, 425 A.2d at 965; Fletcher Cyclopedia Corporations § 856.

Assuming *arguendo* that Defendant had an employment relationship with Plaintiff, the Court finds that Plaintiff has pleaded no facts whatsoever with respect to its blanket allegations that Defendant "[v]iolated the employer/employee relationship"; "accessed valuable trade secrets, confidential business information, client lists, insider knowledge and information"; "failed to carry out the business of his employer"; "convinced current clients, new clients and potential clients to leave the plaintiff's firm and to join the Defendant's company"; "failed to work for his employer"; and "betrayed his employer." *Id.* ¶ 22(a)-(f). As stated above, on a Motion to Dismiss for failure to state a claim, while the Court must construe the Amended Complaint in Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are not supported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276. The court is in fact limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See St. Francis Xavier Sch.*, 117 F.3d at 624; *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993). Plaintiff has not provided the Court with any facts supporting its claims of Defendant's alleged misconduct and/or "wrongful acts"–not one date, client taken away or attempted to be taken away by Defendant, insider knowledge accessed by the Defendant, nothing. As such, the Court shall grant Defendant's Motion to Dismiss for failure to state a claim with respect to Count 2 of Plaintiff's Complaint.

        3.    <u>Count 3: Misappropriation and Conversion</u>

In Count 3 of Plaintiff's Amended Complaint, Plaintiff alleges that "defendant, HOWE,

22

misappropriated and converted client lists, trade secrets and confidential information and breached his fiduciary duties." Am Compl. ¶ 31. Plaintiff states that Defendant was "the public face of Plaintiff's company . . . was paid to act in the best interests of his employer . . . [and] [n]otwithstanding said duties . . . did then and there carelessly, willfully, and recklessly misappropriat[e] client lists, confidential information, and trade secrets and conver[t] them to his own use and for that of establishing his own company. *Id.* ¶¶ 26-28. Plaintiff repeats the allegations (i.e., "violated the employer/employee relationship, etc.") as well as the alleged harm set forth in Counts 1 and 2. *Id.* ¶¶ 29, 31(a)-(f), 32. In Defendant's Motion to Dismiss, Defendant argues that this Count "suffers from the same legal deficiency that plagues Count III, namely, failure to plead with adequate specificity the necessary elements of a misappropriation or conversion claim. *See Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. at 1630." Def.'s Mot. to Dismiss at 13.

Pursuant to D.C. Code § 36-401(2), "misappropriation" is defined as:

> A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
>> (I) Used improper means to acquire knowledge of the trade secret; or
>> (ii) At the time of disclosure or use, knew or had reason to know that the trade secret was:
>>
>>> (I) Derived from or through a person who had utilized improper means to acquire it;
>>> (II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;
>>> (III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>>
>> (iii) Before a material change in his or her position, knew or had reason to know that the information was a trade secret and knowledge of the trade

secret had been acquired by accident or mistake.

D.C. Code § 36-401(2). "Trade Secret" is further defined as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (A) Derives actual or potential independent economic value, from not being generally known to, and not being readily ascertainable by, proper means by another who can obtain economic value from its disclosure or use; and (B) Is the subject of reasonable efforts to maintain its secrecy." D.C. Code § 36-401(4).

Plaintiff has not identified any "trade secret" in its Amended Complaint sufficient to allege a claim of misappropriation against Defendant. While Plaintiff states generally that Defendant "misappropriated and converted client lists," the Court agrees with Defendant's assessment that the client list of a registered lobbyist such as Plaintiff is not a "trade secret," due to Plaintiff's legal obligation to publicly disclose its clients. *See* Def.'s Mot. to Dismiss at 15-16; Lobbying Disclosure Act of 1995, 2 U.S.C.A. §§ 1601-12 (West 2006). *See also PM Services*, 2006 WL 20382 at *29.

Conversion is "any unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto." *Shea v. Fridley*, 123 A.2d 358, 361 (D.C. 1956); *Furash*, 130 F. Supp. at 58. When the initial possession of the property is lawful, "in the absence of other facts and circumstances independently establishing conversion, a demand for return is necessary to show the adverse nature of the possession." *Furash*, 130 F. Supp. at 58. If a plaintiff retains the original or copies of a document, said Plaintiff cannot state a claim for conversion because the owner has not been "deprived" of its use. *Id.*

Plaintiff clearly does not state any facts supporting a claim of conversion against

24

Defendant, as Plaintiff has not identified any personal property taken by Defendant that it can no longer access because Defendant has exclusive access to or use of it. In sum, Plaintiff has failed to state a claim for either misappropriation or conversion such that the Court shall grant Defendant's Motion to Dismiss with respect to Count 3 of Plaintiff's Amended Complaint.

4.    Count 4: Fraud

In Count 4 of Plaintiff's Amended Complaint, entitled "Fraud," Plaintiff largely repeats the allegations as set forth in Count 3. Plaintiff argues that Defendant "misappropriated client lists, confidential information, and trade secrets and converted them to his own use and for that of establishing his own company." Am. Compl. ¶ 37. Plaintiff seems to imply a claim of fraud in its Complaint by repeating its list of allegations against Defendant (i.e., "violated the employer/employee relationship, etc."), alleged harms, and additionally emphasizing that Defendant "was accepting a salary to work on behalf of his employer and to expand the business of his employer." *Id.* ¶ 34. In Defendant's Motion to Dismiss, Defendant argues that "GRI's failure to meet the specific pleading requirements for fraud under District of Columbia law and the Federal Rules of Civil Procedure dictates the dismissal of its fraud count." Def.'s Mot. to Dismiss at 17-18.

Under District of Columbia law, an allegation of fraud must be pleaded with particularity, including facts that reveal the following essential elements: (1) a false representation; (2) concerning a material fact; (3) made with knowledge of its falsity; (4) with the intent to deceive; and (5) upon which reliance is placed. *Higgs v. Higgs*, 472 A.2d 875, 876 (D.C. 1984); *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 100 (D.D.C. 2004). Also, pursuant to Federal Rule of Civil Procedure 9(b), "all averments of fraud or mistake, the circumstances

25

constituting fraud or mistake shall be stated with particularity." *See also United States v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981) (stating that normally a pleader must state the time, place, and content of false misrepresentations, the fact misrepresented, and what was obtained as a result of the fraud); *Wiggins v. District Cablevision, Inc.*, 853 F. Supp. 484, 498 (D.D.C. 1994) (holding that pursuant to Rule 9(b), a pleader must allege facts that demonstrate all of the required elements of fraud).

In its Order dated May 9, 2006, upon reviewing the Amended Complaint, the Court noted that "Count 4 of the Amended Complaint has not been pleaded with specificity as generally required of fraud claims[.]" [15] Order at 3. The Court reiterates that statement here. Plaintiff's Amended Complaint, which alleges to set forth a "Fraud" claim simply by including the word in its heading, does not plead with particularity any facts with respect to its allegations against Defendant. In fact, Plaintiff does not cite to any specific false representation made by Defendant (concerning a material fact or otherwise) such that the Court could proceed in applying the other essential elements of a fraud claim as set forth in *Higgs* and its progeny. As such, the Court shall grant Defendant's Motion to Dismiss with respect to Count 4 of Plaintiff's Amended Complaint, such that Count 4 shall be dismissed with prejudice, as Count 4 does not constitute an adequately pleaded fraud claim, and Plaintiff has forfeited its right to amend said Count as explained in Section III(A) of this Opinion.

## IV.  CONCLUSION

Based on the aforementioned reasoning, Court shall DENY Plaintiff's [24] Motion to Amend Complaint Nunc Pro Tunc, DENY Plaintiff's [21] Motion to Enlarge Time, and GRANT Defendant's [18] Motion to Dismiss. The Court shall DISMISS Plaintiff's Amended Complaint

26

in its entirety.  Defendant's Counterclaims against Plaintiff remain.  Defendant/Counterclaimant

shall file a notice with the Court by February 7, 2007, as to whether he plans to proceed with his

counterclaims.  An Order accompanies this Memorandum Opinion.


Date:  January 24, 2007


                                              /s/
                                    _____
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge

27

CLERK'S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Washington, D.C. 20001

Joe Burgess                                    Phone (202) 354-3166
Operations Analyst                             Fax  (202) 354-3008

## MEMORANDUM

**TO:**          Judge  Colleen Kollar-Kotelly

**FROM:**        Joe Burgess, Operations Analyst

**IN RE:**       Emails regarding CA 05-1081, Goverment Relations Inc. v. Howe

**DATE:**        July 6, 2006

---

I have examined the records in CA 05-1081, Government Relations Inc. v. Howe, and attached the receipts for all transactions in the case.  The receipts support that David E. Fox has never changed his email address in the system since the beginning of the case.  To further substantiate this finding, Greg Hughes and I experimented in our test data base to ascertain whether once an email has been changed whether it would change prior records.  Our conclusion was that it did  not.  (See attached test data base example for CA 03-3030).

Finally, at your request, I examined the bounced emails for May 9, 2006,( #15 Order denying without prejudice motion to dismiss; granting motion to amend) and July 3, 2006 (Minute Order).  There were no bounced emails for these dates relating to this case for either counsel.

EXHIBIT